## STOKELY *v.* BURKE.

### (*Knoxville.*   September Term, 1914.)

1. **ELECTIONS.  Contest.  Ballots.**
   Where ballots cast at an election have been preserved in accordance with the statutory requirements, which have prevented tampering with them, and they are offered in evidence in a contest in which the issue depends on the number of ballots ·cast for each candidate, they are primary and controlling, and sufficient in law to overthrow the *prima facie* case made by the returns, in case the showing made by the ballots conflicts with that made by the returns; but where the ballots have not been properly preserved, and unauthorized persons have had reasonable opportunity to tamper with them, their competency as evidence is destroyed. (*Post, pp.* 223-226.)

   Acts cited and approved:   Acts of 1907, ch. 436, sec. 15.

   Case cited and approved:   Newhouse v. Alexander, 27 Okla., 46.

   Case cited and distinguished:   Taylor v. Carr, 125 Tenn., 253.

2. **ELECTIONS.  Contest.  Ballots.  Preservation.**
   Where ballots voted at an election were not only not preserved as required by law, but were three times counted by unauthorized persons after the election, and ample opportunity afforded for destruction or substitution, they were inadmissible to control the returns of the contest. (*Post, pp.* 226, 227.)

---

FROM COCKE.

---

Appeal from the Circuit Court of Cocke County.— G. McHENDERSON, Judge.

H. N. CATE, for Stokely.

J. B. Holloway and J. R. Penland for Burke.

Mr. Justice Buchanan delivered the opinion of the Court.

This is an election contest. The parties were rival candidates for the office of justice of the peace of the Sixth civil district of Cocke county, at the regular election held therein, on the 1st day of August, 1912. No point is made as to the eligibility of either candidate; the sole question is: Who was elected? The returns made by those charged by the statutes with the duty of holding the election showed that Burke received 210 votes, that Stokely received 209 votes, and that Burke was elected. Wherefore, Stokely, conceiving himself to be thereby aggrieved, set on foot this suit, seeking to go behind the election returns, and by judicial inquiry and sentence to establish their falsity and his election and his opponent's defeat. Of such a suit, the county court is the one of the first instance (sections 1308 and 1317, Shan. Code), and there this suit was instituted, and proceeded to judgment in favor of contestant Stokely, from which Burke, contestee, appealed to the circuit court of the county, where judgment went in favor of Burke, and Stokely appealed to this court, and here seeks a reversal of the judgment of the circuit court. His assignments of error raise a single question, which is determinative of the controversy. That question is: Was the circuit court in error in sustaining an objection made by the contestee Burke on the trial of the cause to the competency as

Stokely v. Burke.

evidence of certain ballots, claimed by contestant to be those cast by the voters at the election aforesaid for each of the parties to this suit?

What occurred on the trial in relation to the above is shown by the following recital from the bill of exceptions:

"The contestant at this juncture offered in evidence the ballots, claimed by contestant to be the original ballots cast in said election, as produced by Mr. Holt, insisting that the ballots, under the facts shown in this case as to their custody, were the best evidence of the result of the election. The contestee, by his counsel, excepted to the introduction of the ballots offered as evidence, on the grounds that they had not been sealed and properly kept from the time they were counted by the election officers until offered in evidence upon this trial, and kept as required by law, and not properly identified as the original ballots voted and returned by the officers of election, and upon the further ground that, from the testimony offered by contestant, there had been opportunity to change or tamper with these ballots, or get them out or misplace them, and that they were therefore inadmissible as against the returns of the election officers. The court sustained the contestee's exception, and excluded the ballots, and declined to admit them as evidence in this case, to which action of the court contestant excepted, and requested the court to cause the ballots to be sealed up in his presence and under his direction, and that they be sent up to the supreme court as a part of the record in

this cause. This request the court granted, and the ballots were accordingly sealed under the direction of the court, and were ordered by him to be sent up as a part of the record of this case. Said ballots are hereby made a part of this bill of exceptions, and will be sent up by the clerk, sealed and identified and indorsed as follows: 'Ballots offered by contestant as original ballots cast in the Sixth civil district of Cocke county, Tennessee, at the regular August election held in 1912, on the first day of August. The clerk will send these ballots up as a part of the record of this cause, and they are hereby made a part of the bill of exceptions.'

"[Signed]     G. McHENDERSON, Judge."

On the same subject is the following excerpt from the judgment of the court:

"The court doth further find that the ballots cast in the election, over which this contest arises, were honestly and fairly counted by the election officers holding said election, and that there was no actual fraud charged against them, nor was there any proof offered to show any actual or attempted fraud on the part of said election officers, and that they honestly declared the result of said election, showing that the contestant, Murry Stokely, received in said election 209 votes and the defendant or contestee, D. M. Burke, received 210 votes in said election, a majority of one vote in favor of said Burke.

"(3) The defendant on the trial of this cause having objected to the court's considering or counting the ballots claimed to have been cast: (1) Because no actual

fraud was charged against the officers holding said election, nor was any proof offered to show any fraud against said election officers in holding said election, nor in counting the ballots and declaring the results; (2) because the proof showed the ballots offered had not been sealed and delivered to the commissioners of election and by them kept and preserved as provided by law in such cases; because the proof showed that said ballots had been so kept that they might have been tampered with, and that there was an opportunity to do so—upon consideration of all of which the court is pleased to sustain said exceptions, to which action of the court contestant excepted in law.''

It is clear from the transcript that, if the court was free from error in the exclusion of the evidence aforesaid, its judgment should be affirmed, upon the ground that the *prima facie* case made by the official returns in favor of contestee was not met and overturned by any evidence offered and received on behalf of contestant.

It is patent without authority, yet cases are abundant on the point, that where ballots cast at an election have been preserved strictly in accord with statutory requirements which have prevented tampering with them, and they are offered in evidence in an election contest where the issue to be tried depends upon the number of ballots cast for each candidate, the ballots are primary and controlling matter of evidence, sufficient in law to overthrow the *prima facie* case made by the returns, where the showing made by the ballots con-

flicts with that made by the returns; and the same result is sanctioned by the weight of authority where the ballots have been preserved, but not in strict accord with statutory authority, yet so preserved that they have not been tampered with by unauthorized persons. In the latter case, the failure of those charged by law to observe the statutory precautions for the preservation of the ballots does not destroy their competency, for in such a case the object of the statutory precautions has been attained, and substantial, though not literal, compliance with the statute accomplished.

Yet it is an equally well settled rule, resting on as sound reason as the former, that where statutory precautions for the preservation of ballots have been disregarded, and it is shown that unauthorized persons have had reasonable opportunity to tamper with the ballots, their competency, as evidence to contradict the *prima facie* case made out by the returns, is destroyed. *Newhouse* v. *Alexander*, 27 Okl., 46, 110 Pac., 1121, 30 L. R. A. (N. S.), 602, Ann. Cas., 1912B, 674, and the cases cited in note.

Mr. McCrary, in his work on Elections, p. 249, says:

"Before the ballots should be allowed in evidence to overthrow the official count and return, it should appear affirmatively that they have been safely kept by the proper custodian of the law; that they have not been exposed to the public, or handled by unauthorized persons; and that no opportunity has been given for tampering with them."

And the same author, at pages 440-438, says:

"The duly certified, official returns of election officers are not subject to the same rules of suspicious reflections and doubtful imputations, as attend the ballots under certain circumstances. The official returns are quasi records, and stand with all the force of presumptive regularity and *prima facie* integrity, not only till suspicion is cast upon them, but until their self-authenticated verity is overcome by affirmative proof that the returns do not speak the truth."

The rules announced heretofore were applied by our own court in the recent case. *Taylor* v. *Carr*, 125 Tenn. (17 Cates), 253, 141 S. W., 745, Ann. Cas., 1913C, 155, where, in an opinion delivered by the present Chief Justice, it was said:

"Moreover, in the present case, it appears that the ballots were not sealed, as required by Acts 1907, ch. 436, sec. 15, before being delivered to the commissioners of election, and, for that reason, they could not be examined, unless it should be made to appear with great clearness that they had been so kept as not to be the subject of interference or change. It does not appear from the evidence that the ballots in the present case had been so kept. The commissioners of election testify that while in their possession they were not altered, but they were placed in the safe of Mr. Allen, the county judge, not sealed up, and subject, of course, to interference by any one who might have access to that safe through Mr. Allen, and the testimony of the latter was not taken. Likewise, it is not clear what care was exercised over the ballots after the election

and before they were handed to the commissioners of
election."

It was also held in *Taylor* v. *Carr,* supra, that under
section 15 of the Act of 1907, ch. 436, the ballots must
be delivered to the commissioners of election sealed
up, and said the opinion:

"It necessarily results that they must be kept by
these officers in that form until needed upon a contest
of election, and then, in case of contest, should be
opened only in some form fair to both sides, after due
notice, and after the adoption of proper precautions
to prevent spoilation or mutilation."

In the present case, the ballots were tampered with.
They were counted three times at the courthouse on
Monday following the election by persons without right
under the law so to deal with them. This was tamper-
ing with them clearly, under the cases. It does not
appear whether the same or a different person handled
the ballots each of the three times they were so counted.
No witness testifies that it was he who handled them at
each count, and that he handled them honestly, and
neither substituted, lost, or misplaced any of them. It
does appear that these three counts were made under
the supervision of the county election commissioners,
but they had no legal right so to intermeddle with the
ballots. They were in their hands for safe-keeping, not
for counting. In addition to this, the ballots were not
sealed, as required by the statute, when placed in the
hands of the election officer at the close of the polls;
they were carried by him unwrapped and unsealed

Stokely v. Burke.

from the polling place to the storehouse of one of the county election commissioners. That each and every identical ballot received by him at the polls was delivered by him to the election commissioner, the election officer could not know and does not say. Again the ballots from the date of the unlawful count by the commissioners to the time they were counted by the chairman of the county court were not under seal; they were delivered to the chairman with only a string tied around them, not even inclosed by wrapping paper, having been so kept for as much as two months. The election commissioner, in whose keeping they had been, testified that they had not been tampered with while in his possession, but he does not undertake to say, nor could he know, that the ballots he delivered to the chairman were each and all the identical ballots voted at the election. The precautions required by the law for the preservation of ballots are designed to prevent, not only post-election frauds, but also accidental loss or misplacement of the identical ballots cast.

For the reasons indicated, it is clear to us that the action of the learned circuit judge was correct, wherefore the judgment is affirmed at the cost of contestant, and the sureties on his cost bond.