J. G. REAGAN *v.* C. K. McBROOM.*

(*Nashville,* December Term, 1931.)

Opinion filed April 30, 1932.

*As to sufficiency of evidence of election returns, see 10 R. C. L., 1126.

On discretion of court as to granting or refusing amendments, see 2 R. C. L., 218; R. C. L. Perm. Supp., p. 388; R. C. L. Pocket Part, title Appeal, section 183; 21 R. C. L., 572; R. C. L. Perm. Supp., p. 5075; R. C. L. Pocket Part, title Pleading, section 127.

478

H. M. CARR and WILL R. STORIE, for plaintiff in error.

J. T. WHEELER, H. N. WRIGHT and A. H. ROBERTS, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The parties above styled were candidates for the office of Circuit Court Clerk of Fentress County at the August election, 1930. Certificate of election was issued to McBroom and he was inducted into office. The present action was commenced by Reagan by petition filed August 14, 1930, asserting his own election by a plurality

of all the votes cast, and praying judgment that he was entitled to the certificate of election and entitled to the office.

A demurrer to the petition was sustained by the circuit court, after an amendment had been filed, and this action of the circuit court was reversed on appeal to this court. *Procedendo* from this court on the remand was made of record in the circuit court on June 18, 1931.

At the term of the circuit court next succeeding the remand of the case the petitioner was permitted to amend his petition so as to add an additional ground of contest, relating to the second voting precinct of the First Civil District of the county. Prior to this amendment the contest had been grounded solely on the election held in the Fifteenth Civil District of the county.

The case was heard by the circuit judge at the August term, 1931, of the circuit court, and judgment was entered sustaining the petitioner's right to the office. Motion for a new trial was made and overruled, and the defendant was granted an appeal to this court.

For answer to the petition, as amended, the defendant denied the truth of the grounds of contest, and asserted that illegal votes were received in the thirteenth voting precinct of the Third District of the county, to such extent as to offset the matters relied upon by petitioner. The answer also averred that in the sixth voting precinct the defendant received three more votes than were counted for him.

The two grounds of contest, as to which evidence was offered, were sustained by the circuit judge. In the fifteenth precinct the returns, as canvassed by the board of election commissioners, gave McBroom 69 votes. On the tally sheets of the poll books for this district the

digit 6 in the figures 69 appeared to have been written over an erasure, and witnesses testified that when this book left the hands of the election officers the number representing the total vote of McBroom was 59. The circuit judge accredited this evidence, with the result that McBroom's total in the Fifteenth District was reduced by 10 votes.

The verity of the returns shown on the poll book for the Fifteenth District was also impeached, in addition to the erasures referred to, by the fact that the total votes counted for the several candidates for the office of circuit court clerk exceeded the total number of persons voting, as shown by the poll list. The number of votes was 109, while the number of voters was 105.

The returns for the second precinct gave McBroom 36 votes. The digit 6 in this total was written over an erasure, and the total number of votes counted for the candidates for the office of circuit court clerk exceeded the number of voters listed by 1. Witnesses testified that when the returns left the hands of the election officers the returns for this district gave McBroom only 32 votes. On this evidence the circuit court reduced the number of votes for McBroom by 4.

The aggregate number of votes counted for McBroom by the board of election commissioners, as shown by the returns from all precincts, was 606. The aggregate number of votes shown by the returns as canvassed for Reagan was 596. Deducting the 14 votes found to have been fraudulently added to the returns for McBroom, the judgment of the circuit court reduced McBroom's total to 592, with the result that the petitioner, Reagan, was adjudged to have received a plurality over McBroom of 4 votes.

The proof shows that the original election returns from the Fifteenth Civil District and from the second precinct were delivered by the election officers to one of the members of the county board of election commissioners on the evening of the day of the election. This member of the board testified that he placed the returns in the drawer of a filing case which was automatically locked when another drawer of the case was locked, and that this latter drawer was locked by him. He further testified, however, that he was out of his office throughout the day following the day of the election; that two other persons had keys to the case; that it was possible that the drawer in which the returns were placed was not locked; and that he could not say that the returns were not changed during the time they were in his office.

The defendant offered no evidence to rebut the testimony of petitioner's witnesses as to the total vote originally entered on the returns for the two precincts. He offered no evidence to sustain the averments of his answer as to fraudulent voters in the Thirteenth District. He did offer the original ballots, for recount, but they were excluded and the packages in which they were contained were not opened.

As the case was submitted to the circuit judge, material and competent evidence had been introduced to establish the contention of the petitioner that the returns canvassed by the board of election commissioners were fraudulently altered so as to give McBroom 14 votes which had not been cast for him. The judgment of the circuit court finding this to be true is not contradicted by any material evidence considered by him; and unless reversible error is found in the procedure, the petitioner is conclusively entitled to an affirmance of the judgment.

The trial of this case was begun in the circuit court on August 21st. On August 19th, counsel for petitioner procured an order from the circuit judge, at chambers, permitting them to take the deposition of Honorable Ward Case, one of the county election commissioners, upon giving the defendant one hour's notice of the time and place. This order was made upon an affidavit that Mr. Case was about to leave the county to fill a professional engagement as counsel in another court and could not be present on the following day, which had been set for the trial. Pursuant to this order, the deposition of Mr. Case was taken on the same afternoon, and was used as evidence for the plaintiff.

Before the trial was taken up, exceptions were filed to this deposition, and assignments of error attack its competency, both for formal defects and for an alleged lack of authority and power in the circuit judge to make the order. It is our opinion that these assignments of error are not material to this appeal. The case was heard by the circuit judge without a jury, which is the proper practice in such cases. *Shields* v. *McMahan*, 112 Tenn., 1.

The appeal is in the nature of a writ of error, and the finding of the trial judge is conclusive on the facts, if sustained by any material evidence. *Brown* v. *Hows*, 163 Tenn., 138, 40 S. W. (2d), 1017.

If the deposition of Mr. Case was incompetent and if it should have been excluded, the defendant would not be entitled to a remand and to a new hearing in the circuit court, but it would become our duty to review the facts without regard to the incompetent deposition. The practice is well settled on this point. *Smith* v. *Hubbard*, 85 Tenn., 306; *Montague* v. *Thompson*, 91 Tenn.,

168, 176; *Nance* v. *Smyth,* 118 Tenn., 349; *Southern Railway Co.* v. *Bickley,* 119 Tenn., 528; *Kittel* v. *Steger,* 121 Tenn.; 400.

In *Smith* v. *Hubbard, supra,* the rule is stated: "The effect of material incompetent evidence must be treated as effecting the conclusion of the circuit judge upon the facts, just as it would that of a jury. In the latter case the cause is remanded for a new trial, while in the former the finding of fact is stripped of the high degree of presumption attached to it otherwise, and this Court will try the cause, as he originally tried it, and render such judgment as he ought to have rendered."

The testimony given by Mr. Case was to the effect that the disputed numbers on the original election returns showed evidence of erasures. He also filed as an exhibit to his testimony a tabulation of the total vote counted for each of the candidates at each of the precincts, and testified that this tabulation correctly showed the totals as canvassed by the board of election commissioners, with 606 votes for McBroom and 596 votes for Reagan.

The testimony of Mr. Case with regard to the erasures contributed nothing to the evidence, since the original returns were themselves introduced in evidence as exhibits to the testimony of the assistant to the Secretary of State, the lawful custodian of these records.

It is strongly insisted on the briefs for the plaintiff in error that the deposition of Mr. Case contains the only evidence of the total vote allowed by the board to the two contesting candidates. This contention is not supported on the record. Mr. Reagan testified that he was present when the votes were canvassed; that McBroom was credited with 69 votes in the Fifteenth District, 36

votes in the second precinct, and 606 votes as his total. He also testified that the board credited him with a total of 596 votes.

Sergeant Alvin C. York, one of the board of election commissioners, testified to the total vote credited to Mc-Broom as being 606.

■ In addition to the testimony on the subject, the original election returns were in evidence, and it would be a matter of simple calculation from these returns to ascertain the total vote credited to each of the contesting parties. In fact all of the testimony as to the total vote was secondary evidence, and the original election returns introduced in evidence were the primary evidence of the fact. If there had been no testimony, the fact of the total vote would appear from the record evidence before the court. Since no contrary evidence was offered, and the deposition of Mr. Case relates solely to matters as to which other evidence was offered, it seems clear that we could render no other judgment than that rendered by the trial judge, even if we should exclude the deposition. This being true, the question of the competency of the deposition is not now material, as hereinabove stated. A determination that it should have been excluded could not change the result.

■ Assignments of error are strongly pressed upon us that the trial judge was in error in refusing to admit in evidence the original ballots cast in the questioned precincts. The plaintiff in error insists that these ballots were competent, under the rule in *Stokely* v. *Burke,* 130 Tenn., 219. In the case cited it was held that the ballots are competent evidence if preserved in such manner, substantially in accord with the statutory direction,

486

so that unauthorized persons have had no reasonable opportunity to tamper with them.

In the present case it is shown that the ballots in the questioned precincts were delivered by the election officers to the member of the board of election commissioners, and were placed by him with the returns in the filing case, hereinabove referred to. Sergeant York testified that when the ballots were received by the board of commissioners, at the time they were canvassed, the ballots from the Fifteenth District were not sealed, but were open. When the returns were canvassed the board of election commissioners put the ballots from each precinct in a separate envelope, and the envelopes were placed in two tin cans. These cans were sealed with strips of gummed paper, and were delivered to the county court clerk for safe keeping.

The county court clerk testified that he placed these cans in his vault, the door to which was closed with a combination lock. It does not appear what other persons knew the combination, if any, but the clerk testified that he also was a candidate in the election of August, 1930, and that his election was involved in a contest. When the cans were brought into the court room all of the gummed seals on the outside of the cans were loose, the clerk testifying that most of them came loose by action of the atmosphere on the day they were placed in the vault.

In ruling that the ballots had not been preserved with sufficient security to render them competent as evidence, the circuit judge referred to the fact that they had been in the possession of the county court clerk, who was involved in a contest affecting the same election, but

in his final ruling he gave an additional ground for holding the ballots incompetent, as follows:

"The allegation of this petition is that the vote in a certain precinct had been changed—that is in one precinct, changed from 59 to 69, another 32 to 36. Without intimation what my belief in the matter is, if those poll books had been changed at the same time it would have been decidedly easier to have regulated the ballots than the poll books. Not only that but the ballots do not seem to have been kept in compliance with the statute. The Supreme Court has passed on it. Notwithstanding my great desire to count the ballots and particularly that 6th District, if I did so it would result in error and the reversal of this Court. However, if there is any authority, I would be glad to see it."

In so far as the vote in the Fifteenth District and in the second precinct is concerned, this observation of the trial judge is necessarily true; that the same opportunity existed for tampering with the ballots in those precincts as existed for tampering with the returns. This being true, we find ourselves unable to hold that the trial judge abused his discretion in holding that the ballots did not possess sufficient verity to entitle the defendant to offer them in evidence. Since they were subject to the same infirmity as the returns, the examination of the ballots could have no effect upon the determination of the verity of the returns.

The board of election commissioners found a discrepancy between the two poll books and tally sheets from the sixth voting precinct. One of the books gave McBroom 20 votes and the other gave him 23. The canvassers allowed him only 20 votes. It is unfortunate that the ballots could not have been examined by the cir-

cuit judge to determine the number of votes to which McBroom was entitled in that precinct, but he claimed only 3 additional votes, and if they had been allowed, that would not have overcome the plurality of 4 votes adjudged to Reagan from the corrected returns.

We conclude, therefore, that the trial judge did not commit reversible error in excluding the ballots.

■ During the cross-examination of the petitioner, he was asked by counsel for the defendant whether he had not had a conversation shortly before the election indicating an intention to procure fraudulent poll tax receipts. It is stated that this question was asked with a view to sustaining the averments of the answer concerning fraud in the thirteenth election precinct. An assignment of error is directed to the action of the trial judge in sustaining an objection to this question, but it appears from the record that the witness answered the question, and that his answer was unfavorable to the defendant. Since, therefore, the question could not have adduced evidence favorable to the defendant, it necessarily follows that the action of the trial judge was not prejudicial to the defendant, and the assignment of error cannot be sustained.

■ It is assigned as error that the trial judge erred in permitting the petitioner to amend his petition at the August term, 1931, by which amendment for the first time fraud was charged with respect to the returns from, the second precinct.

The original petition was filed August 14, 1930, and the demurrer of the defendant was sustained by an order entered August 21, 1930, on which day an appeal was prayed and granted, and the circuit court thereby denuded of jurisdiction. The amendment to the petition

was made on the first day of the first term after jurisdiction was restored to the circuit court by the *procedendo* from the Supreme Court, which was a few days more than a year after the date of the election. The amendment was made upon an affidavit of the petitioner that its averments were not known to him at the time the original petition was filed.

We are of the opinion that the allowance or refusal of this amendment was within the discretion of the trial court. While more than a year had elapsed since the election was held, there had been no opportunity for offering the amendment since the appeal was prayed and granted on August 21, 1930.

The statute fixes no time limit for the institution of a suit to contest the election of a circuit court clerk, and there is, therefore, no statutory provision to curtail the discretion of the trial court. *Boring* v. *Griffith,* 48 Tenn., 456.

The allowance or refusal of amendments to pleadings, in the absence of statutory restriction, has always been held to lie within the sound discretion of trial courts, and it is seldom that the exercise of such discretion has been adversely reviewed on appeal. *Railroad* v. *Hayden,* 116 Tenn., 672, 684; *Wofford* v. *Hooper,* 149 Tenn., 250.

The record fails to show that the defendant was prejudiced by the fact that the matters contained in this amendment were not injected into the case when the petition was first presented to the court. As stated hereinabove, there was no conflict in the evidnece as to the facts, and there is, therefore, nothing to which we can point as evidencing prejudice to the defendant or as showing an abuse of discretion on the part of the trial court.

■ The remaining assignments of error are related to each other and may be treated together.

The record recites that on August 13, 1931, an order was entered by the trial court fixing August 20th as the date for the hearing. On August 19th the trial judge caused an order to be entered by which he held himself incompetent to conduct the trial on account of the fact that he himself was a candidate for election to the office of judge of the circuit court at the same election. In this order it was suggested that counsel agree upon some member of the bar to try the case. No order was entered on August 20th, the day set for the hearing, but on August 21st an order was entered vacating the order of August 19th, reciting the opinion of the judge that he was not incompetent to hear the case for the reason assigned or for any other reason, and that it was his duty to hear the case. The trial was begun on that day.

Counsel for the defendant protested against this second order, and by statements in open court, as well as by affidavits, represented that they had been misled by the order of August 19th into thinking that the trial of the case would not be held at the August term. They insisted by motion that the trial judge could not vacate the order of August 19th, and asked for a change of venue to an adjoining county because of the incompetency of the circuit judge. When these motions had been overruled, a continuance was sought on the ground that, having been misled as above stated, counsel had suspended their preparations for trial and were not ready. They asked for a continuance for the term, and in the alternative, asked for a postponement for as much as two weeks.

All of these contentions of counsel for defendant were overruled, and the trial was begun on August 21st, as above stated. In overruling the application for a continuance and for a postponement, the trial judge said to counsel that the case was one of public interest, involving a public office; that he would give the defendant the opportunity to get every witness in the jurisdiction of the court, and further said: "If necessary I can come back next week to give you an opportunity to offer any evidence you can bring."

At the conclusion of the trial an order was entered, granting the defendant until September 16th, a period of about three weeks, within which to prepare and file his motion for a new trial. The record does not show the date on which the motion was overruled, but presumably the time allowed for the motion was taken.

Neither in the statements made in open court nor in the affidavits did counsel for the defendant refer to any witnesses desired by them who were not available, except one Parnell, formerly a member of the bar of Fentress County, who had removed to Alabama. It was stated by counsel that they could "show by Mr. Parnell that a large number of tax receipts went out of the trustee's office before the election with their legal dates thereon, and defendant charges after they went out of the trustee's office, their dates were changed to a date more than sixty days before the election. It cannot be proven by any other witness."

It is not contended that the fact that the trial judge was a candidate for his office in the same election rendered him incompetent to try this case, and it is not suggested that the trial judge was other than a fair and impartial judge. All orders are within the breast of

the court during the term, and we are cited to no principle of law which would invalidate the order of August 21st, by which the trial judge announced that he had reconsidered the matter and held himself competent. This action of the trial judge presents no ground for vacating the judgment subsequently rendered in the case.

The contention of counsel for the defendant that they were misled into thinking that the trial of the case would be postponed is supported by reasonable grounds and is meritorious. We think they were justified in suspending preparations for trial on August 19th, and this attitude on their part was supported by the fact that August 20th, the day set for the hearing, went by without action on the part of the court or on the part of counsel for petitioners. But assuming this to be true, the record is lacking in any showing of prejudice to the defendant from the fact that the case was taken up and heard on August 21st. The trial judge offered to postpone the hearing of evidence of the defendant until the following week, but no such continuance was invoked. The record is silent as to any effort made by counsel for the defendant to procure the attendance of any witnesses by whom they could disprove the facts alleged by petitioner with respect to the original returns in the fifteenth and second precincts. If counsel had the names of any witnesses in the county whom they desired to have subpoenaed, they have not disclosed the fact in the record; and during the three weeks allowed for the preparation and filing of the motion for a new trial no affidavit or testimony was procured to show to the court that the defendant had been prejudiced by being forced to trial on August 21st. There was ample time to procure an affidavit from Mr. Parnell reciting the material

facts as to which he could give testimony on another hearing.

The record contains nothing from which we could infer that any additional evidence would be available to the defendant or would be offered by him on another trial; and in the absence of such a showing we cannot say that prejudice resulted to the defendant from the action of the court in overruling his application for a continuance.

 Nor was there anything presented to the trial judge on the hearing of the motion for a new trial, after, a delay of weeks, upon which he could have based a holding that he had committed error prejudicing the defendant in holding the trial on August 21st. On an appeal in the nature of a writ of error this court does not review the action of the trial judge in denying a continuance, but the appellate court reviews the action of the trial judge in refusing a new trial because a continuance was not granted. *Railroad* v. *Johnson,* 114 Tenn., 632, 637. It is, therefore, incumbent upon the unsuccessful party to make some showing upon the motion for a new trial that he was prejudiced by being denied a continuance, and this may be done by showing that he was deprived of some evidence which he could have produced if the trial had been postponed. When no such showing is attempted, even though time is allowed for the preparation of the motion, there is nothing upon which the appellate court can predicate a finding of prejudice.

So, after reviewing all of the assignments of error made for the plaintiff in error, we have before us a record in which the practically undisputed evidence shows the election of the petitioner to the office for which he was a candidate; and while it appears that counsel for the plaintiff in error were taken by surprise when the

case was tried on August 21st, neither then not subsequently, on the hearing of the motion for a new trial, did they bring to the attention of the trial judge any particular evidence tending to dispute or overthrow the case made out by the petitioner. In such circumstances we cannot say that the trial judge was in error in refusing to award the plaintiff in error a new trial.

It results that we must affirm the judgment of the circuit court, with costs.