BLACKWOOD *et al. v.* HOLLINGSWORTH.

(*Knoxville,* September Term (May Session) 1952.)

Opinion filed June 5, 1953.

428

Hobart F. Atkins, of Knoxville, and T. R. Chadwick, of Clinton, for plaintiffs in error.

Jennings, O'Neil & Jarvis, of Knoxville, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

The question in this election contest is whether Mr. Blackwood or Miss Hollingsworth was elected County Court Clerk of Anderson County in the general election held on August 3, 1950. On the face of the returns Blackwood received a plurality, and was issued a certificate of election. There were four candidates.

On August 22, 1950 Miss Hollingsworth filed a contest in the County Court of Anderson County, Code Section 2112. She alleged a fraudulent miscalling of votes at certain precincts, and asserted that a correction of such fraud will establish it as a fact that she was elected.

On account of the incompetency of the County Judge, the Circuit Judge of Anderson County sat in his stead, Code, Sec. 9909. He sustained a demurrer. Miss Hollingsworth appealed to the Circuit Court of Anderson

County, Code, Sec. 9028. Inasmuch as the judge of that Circuit Court sat as County Judge in this contest he declared himself incompetent and, in response to the application of Miss Hollingsworth, transferred the case to the First Circuit Court of Knox County, Code, Sec. 9907.

The Circuit Court of Knox County found and adjudged the fact to be that Miss Hollingsworth received a plurality of the votes; hence elected. Blackwood has perfected his appeal to this Court.

This Court readily recognizes the inconveniences and handicaps mentioned by the plaintiff-in-error to which a litigant in an election contest is subjected by reason of the suit being tried in a county other than that in, and for, which the election was held. Nevertheless, these objections must yield to the mandate of Code Section 9907, providing that where the judge of any court of law is incompetent for any reason, other than interest, to try a given case, then, upon application of either party to the suit, that case ''shall be transferred to the nearest court having jurisdiction of such cases where like incompetency does not exist.'' The nearest Court having jurisdiction was a Circuit Court of Knox County.

There are eight voting precincts in the Oak Ridge District of Anderson County. The boxes were kept open for voting in these precincts, as permitted by law, until 7 P. M. In the remaining precincts of the County the polls were closed at 4 P. M. Miss Hollingsworth received outside of the Oak Ridge precincts a better than two to one majority over the nearest of the four opponents, Blackwood, and that fact was known before the polling places at the eight Oak Ridge Precincts had closed. The tabulation of votes in these precincts consumed many hours by reason of the large vote and was not completed at one of the polling places until mid-afternoon of the

next day. According to the official returns, the vote for Blackwood in these eight precincts was sufficient to overcome Miss Hollingsworth's plurality and to elect him by a plurality of 159.

The petition of Miss Hollingsworth alleged that the majority thus given to Blackwood in each of these eight precincts was fraudulent in that ballots at each, and to a total of several hundred votes, which had been marked for her were fraudulently called for Blackwood, as were ballots which had been cast for one of the two other candidates in the race; that when the fraudulent miscalling of ballots in these eight precincts is corrected so as to give her there the votes which were cast for her and take from Blackwood the votes which were not cast for him, it will be established that she was elected. Other substantial irregularities at each of the precincts justifying a suspicion as to the integrity of the call of the ballots were alleged.

The allegations of the petition with reference to the manner in which the ballots had been preserved, if those allegations be true, were sufficient to justify the conclusion that these ballots had not been tampered with by unauthorized persons between the time they were placed in the ballot boxes and the time those boxes were impounded.

Blackwood filed a demurrer in the County Court on the ground that the allegations of the petition were not specifically sufficient. Miss Hollingsworth sought to file an amended petition making more specific the allegations of the petition. The Circuit Judge, sitting as County Judge, disallowed the amendments on the ground that they were filed too late. He likewise sustained the demurrer. After the case was transferred to the Circuit Court of Knox County the aforementioned amendment,

and subsequently another to like effect, were offered and allowed. The demurrer to the bill, as amended, was again offered and overruled. Blackwood's insistence is that this was error.

In the absence of statute, the allowance of amendments to bills and petitions is a matter within the sound discretion of the Trial Court. The discretion so exercised, in the absence of its abuse, is not generally disturbed. *Reagan* v. *McBroom,* 164 Tenn. 476, 489, 51 S. W. (2d) 995. The amendments in the instant case propose no change in the grounds of contest nor in the relief asked. They only allege in more detail the grounds of contest already stated. The allowance of these amendments was not, therefore, an abuse of discretion. *Hollis* v. *State, ex rel. Vaughan,* 192 Tenn. 118, 122, 237 S. W. (2d) 952.

In considering whether the allegations of the petition were sufficient to withstand demurrer, this case must not be confused with one in which it is sought to overcome the official returns by alleging that illegal votes are included therein in a number sufficient to reverse the result when the official returns are purged of such votes. In that situation, as held in *Shoaf* v. *Bringle,* 192 Tenn. 695, 241 S. W. (2d) 832, the contestant must specifically point out the allegedly illegal votes cast for the contestee. Otherwise, there would be no basis upon which to determine for whom those illegal votes were cast. In the instant case the contest is based upon the allegation that more than several hundred legal votes cast for the contestant were fraudulently called by the election officials and credited to the contestee. Once a ballot is placed in the box there is no way of ascertaining the identity of the person who cast it. Therefore, to require the contestant to allege in her petition the identity of the voter whose

ballot was fraudulently called for the contestee, though cast for contestant, would be to require of the contestant that which is impossible. But if the proof be sufficient to justify the Court in going behind the official returns and sufficient to conclude that an unauthorized approach to the ballots in the box has been sufficiently guarded against, then the recount of these ballots establishes the truth or falsity of the charge made as to miscalling ballots.

Upon the hearing, if there be proof that ballots cast for the contestant in a particular precinct were called for contestee, or proof of other irregularities indicating the same result, the Court would be justified in going behind the returns and recounting the votes in that precinct, assuming likewise satisfactory proof that there had been no tampering with these ballots in the meantime. Such are the allegations of this petition. The demurrer was, therefore, properly overruled.

Mr. Blackwood was in ill health at the time of the institution of this suit in August of 1950. The trial of the case commenced December 27, 1951. An effort was made in behalf of Blackwood to further postpone the commencement of the trial on the ground that his health was such that he could not attend. In the meantime he was exercising the privileges and receiving the emoluments of the office in question. The judge refused to longer continue the case with the assurance, however, that if, and when, it could be made to appear that the absence of Blackwood was about to prejudice his rights the trial court would be governed accordingly as to further proceedings. No such showing was ever made. Mr. Blackwood did appear on March 19 when the case was more than eighty (80%) percent completed, and gave his testimony the next day. The action of the court in

denying Blackwood's application for a continuance is assigned as error.

It is obvious that the character of this lawsuit was such that a trial should have been had as soon as consistent with justice and orderly processes. The public interests so demanded, as well as the private rights of the litigants. At the time this application for further continuance was made more than nineteen months had elapsed since the institution of the suit. Therefore, under that view of the matter most favorable to Mr. Blackwood the failure of the Court to further continue the case ought not to be a ground for reversal, in the absence of a showing that Mr. Blackwood was thereby prejudiced. Such a showing is not made. Our reading of the record leaves us with the impression that he was not prejudiced.

██ ██ Code Section 1812(4) makes persons who are defaulters at the time of the election ineligible for election, "and the election of any such person shall be void." Blackwood's answer averred that Miss Hollingsworth was such a defaulter. On motion, that averment was stricken on the ground that the question is not whether the contestant "is eligible to take the office, but whether she was duly elected to it, as she claims". Blackwood's insistence is that it was error to strike this averment.

On principle, Blackwood's right to the office ought not to be allowed to rest upon Miss Hollingsworth's ineligibility to hold that office, notwithstanding the fact that she received a plurality of the votes cast. Compare *Lewis* v. *Watkins,* 71 Tenn. 174, and such seems to be the general rule. "*   *   the fact that a plurality or a majority of the votes are cast for an ineligible candidate at a popular election does not entitle the candidate receiving the next highest number of votes to be declared elected. In such case the electors have failed to make a choice

and the election is a nullity.'' 29 C. J. S., Elections, Sec. 243, page 353, citing a number of cases.

When the contestant had about completed the introduction of evidence she made a motion that the ballot boxes in the eight precincts of Oak Ridge be brought into Court, opened and the ballots re-counted. Over the objection of Blackwood this motion was granted as to the boxes in five precincts. Blackwood excepted to this on the ground that the ballots had been so kept that there was an opportunity for tampering with them, and that such had, in fact, occurred. The admission of these ballots as evidence is assigned as error. In determining that question we must be limited to the ground upon which Blackwood excepted to their admission. Likewise, in considering this question, we will limit the investigation to the High School Precinct box because Blackwood's plurality is overcome only by the re-count in that box. There was no variance from the official returns in three of these precincts, and the difference at the fourth Miss Hollingsworth gained only thirty-nine, notwithstanding one of her witnesses said that he personally saw more than one hundred ballots thus called for Blackwood, though marked for Miss Hollingsworth.

Prior to this election an arrangement had been made by the County Election Commission with the city to store in the City Jail the ballots cast in the August election. In the back of that building is a room known as the women's cell. The only entrance therein is by a door to which there existed two keys. One of these keys was kept continuously during the period with which we are concerned by the city recorder. That key need not be further considered. The interior of this cell could be seen through the bars by persons on the outside. The ballot boxes in this election were placed in that cell.

The tabulation of the vote at the High School Precinct was completed about three o'clock on Friday afternoon, August 4. The ballot box with the ballots therein was sealed, locked and turned over to Mr. Boyd, the employed registrar of the county election commission, according to the testimony of one of the judges at this precinct. Mr. Boyd does not seem to remember this. He handled many boxes on this election night and the next day. However, one of the election commissioners, Mr. Underwood, was at the city jail Friday afternoon and caused a check of the boxes in the cell in order to ascertain whether they were all there. By this check it was developed that all the boxes were in this cell.

Commissioner Underwood, having ascertained that all boxes were in the cell, made sure that the cell was locked. He then left with the key to that cell, and kept it until the commissioners went back to this cell on the following Monday morning for the purpose of getting the poll list in order to canvass the returns. The boxes were unlocked and the returns removed. The boxes were again locked, as was the cell door. The key was retained by Commissioner Underwood until some days later it was delivered by him to election Commissioner Watlington because Commissioner Underwood was leaving town for a while. It was kept by Watlington in his safe until turned over to the Court during this trial. The evidence requires the conclusion that it was not removed by any one from that safe during this interval.

The keys to the ballot boxes were kept at all times by the employed registrar of elections, Mr. Boyd. There is no basis for a conclusion that these keys ever left his possession during the interval under investigation here.

The evidence heretofore related is not contradicted. It appears to be entirely credible. If true, it forces the conclusion that during the interval under investigation here the High School Precinct ballot box was so preserved that no opportunity was afforded to tamper with the ballots in that box. It necessarily follows, therefore, that the exception made by contestee Blackwood to an inspection of the ballots in this box was not well taken. *Stokely* v. *Burke,* 130 Tenn. 219, 224, 169 S. W. 763.

On the Court's recount of the ballots in the High School Precinct box it was discovered that the official returns gave Blackwood 161 more votes than he actually received there and gave Miss Hollingsworth 185 votes less than she actually received. This changed Mr. Blackwood's plurality into a plurality of 259 for Miss Hollingsworth when there is added the 39 votes which she gained on the recount of the Pine Valley Box.

After the re-count of the ballots in these two boxes the contestee introduced his evidence. One witness testified that on Friday night following the election he observed an open ballot box on a table in a room next to the women's cell and some unidentified man was standing there with some papers in his hand. Likewise two of the officers at the High School Precinct box testified to placing the talley sheets, absentee ballots and other paraphernalia on top of the ballots when they locked this box. When that box was opened in the Court at Knoxville some of this paraphernalia was found down among the ballots. It is insisted that because of this evidence the Court should find that there had been a tampering with this box.

There was evidence of empty ballot boxes left in the hallway at the back of the jail next to the women's cell. That fact plus the apparent publicity with which this un-

identified man with papers in his hand was standing near an open ballot box in the hall next to this cell rather negatives the thought that the transaction in question was a stuffing of a ballot box. When it is recalled that the High School Precinct box, after being locked at Oak Ridge High School, was carried to the Clinton jail where on the following Monday it was entered by the election commissioners, and thereafter was carried to the Knoxville jail and thence to the Courthouse there, it is understandable that some of the papers originally placed upon the top of the ballots in this box may have worked or been worked down among the ballots. However that may be, we are of the opinion that the two items of evidence mentioned are by no means sufficient to obviate the conclusion required by the great weight of the evidence that there was no opportunity to tamper with this ballot box at any time during the interval in question in this case.

This Court is quite perplexed as to how this large discrepancy in the High School Precinct box occurred. There is hardly an escape from the conclusion that the officials at this box either fraudulently miscalled these ballots or the box was stuffed in some manner after it got to the city jail in Clinton. Those ballots were not made a part of the bill of exceptions, but the Circuit Judge, in his findings of fact, stated:—''There was nothing on the great number of High School ballots examined personally by the Court that indicated a mass marking of ballots by the same person. Voting crosses or checks appeared to have possessed individual characteristics, different and varying.''

On the other hand, the election officials at this box seem to be persons of good character. They were well educated. Some of them occupied business positions of

considerable responsibility. They were without interest in this election other than that of rendering a public service. They were, for the most part, unacquainted with Blackwood. There is nothing about their testimony that casts upon it a shadow of suspicion. It is almost inconceivable that any of these persons would be guilty of fraudulently miscalling these ballots. But the extent of the apparent miscalling here conclusively implies fraud somewhere.

We are not able to agree with the Circuit Judge, who so ably and patiently tried this difficult case, that significance is to be attached to (1) the fact that in the beginning of the tabulation the first 75 or 100 votes were recorded on the back of an unused ballot, rather than upon the talley sheet, (2) the testimony of witness Perry to the effect that he saw some woman unknown to him call ballots at this box for probably an hour. That testimony is worthless in our opinion, since Perry admitted that he did not know either this woman or the women who were among the officials at that precinct on that occasion. The undisputed testimony is that no persons but election officials there called ballots. The tabulation of the first 75 to 100 votes on the back of an unused ballot is unimportant, in our opinion, in the light of the undisputed testimony that when this irregularity was called to the attention of these officials who had had little experience in elections, the votes so recorded on this unused ballot were transferred to the talley sheets.

However, unless there be a complete departure from the evidence, and an entering into the realm of pure speculation, it must be concluded that this box was so preserved as to prevent the stuffing of that box with fraudulent ballots after it was sealed and locked by the election officials at that precinct. On this appeal,

therefore, the Court feels compelled to affirm the judgment in the Circuit Court because the ballots as found in this box were marked to the far reaching extent mentioned contrary to the official returns. Once properly admitted into evidence, "the ballots are primary and controlling matter of evidence, sufficient in law to overthrow the prima facie case made by the returns". *Stokely* v. *Burke,* supra, 130 Tenn. at page 223, 169 S. W. at page 764.

We did not consider as well taken the motion of Miss Hollingsworth to affirm because of a failure to make the ballots in question a part of the bill of exceptions. It was unnecessary, however, to discuss the question in view of the result which we have necessarily reached.

Affirmed and remanded for any further proceedings that may be necessary, with costs of appeal adjudged against Blackwood and his sureties.