## P. S. BROWNING *v.* J. M. GRAY.

*(Nashville.* December Term, 1916.)

**ELECTIONS. Official oath. Necessity.**

The statutory requirement that officers and clerks of elections shall take oaths prescribed is mandatory, but when it affirmatively appears that no injury was done, either to the voters or to the candidates, failure to take and subscribe the oath by the officers of an election is a mere irregularity for which the election will not be invalidated.

Cases cited and approved: Barry v. Lauch, 45 Tenn., 593; State ex rel. v. Burrow, 119 Tenn., 376; Cook v. State, 90 Tenn., 414; Peabody v. Burch, 75 Kan., 543; McGrane v. Nez Perce County, 18 Idaho, 714; Tuntland v. Noble, et al., 30 S. D., 145; Hughes v. Roberts et al., 142 Ky., 142.

Case cited and distinguished: McCraw v. Harralson, 44 Tenn., 40.

---

FROM CLAY.

---

Appeal from the Circuit Court of Clay County.— C. E. SNODGRASS, Judge.

JNO. J. GORE and M. C. SIDWELL, for petitioner.

W. C. DAVIDSON, O. B. MAXEY, W. D. FISKE and W. R. OFFICER, for defendant.

MR. JUSTICE LANSDON delivered the opinion of the Court.

The petition in this case was filed by the petitioner, P. S. Browning, for the purpose of contesting the right of the defendant, J. M. Gray, to the office of sheriff of Clay county. It is shown by the petition that at the regular August election, the defendant Gray received seven hundred and thirty-seven votes, and the petitioner, his nearest competitor, received seven hundred and twenty-three votes; that in these totals are included the votes cast at the Fox Springs precinct, where the petitioner received nine votes and the defendant Gray received thirty votes. It is averred that at said precinct election the officers of election, bing provided with proper blanks furnished by the election commissioners of the county, opened and held the election, and at the conclusion of the voting filled out and signed the certificates or affidavits in blank furnished them by the election commissioners; but no oath was administered to them by any officer authorized to administer oaths, that the filling out of said affidavits after the polls were closed and presenting them to the election commissioners, when in fact they were not sworn to, was a fraud and the case stands as if no affidavit had been subscribed and no oath administered. It is also shown by the petition that with this precinct eliminated from the total returns, the defendant Gray would not have received a majority of the legally cast votes in said

county, and that the petitioner would have received such majority, and is the legally elected sheriff of the county and entitled to be inducted into the office.

There was a demurrer to the petition, which was sustained by the circuit judge, who rendered judgment accordingly. From this judgment the petitioner Browning has appealed and assigned errors.

In the petition, as well as in the brief and argument at the bar, petitioner's counsel cast his case entirely upon the failure of the officers holding the election at the Fox Springs precinct to take the oath prescribed by the statute. The oath is as follows:

"You do solemnly swear that, as judge of this election, you will suffer no one to vote whom you know, of your own knowledge, or who appears, either by his own oath or by the testimony of others, not to be a qualified voter; that you will not suffer the ballot box to be out of the presence or sight of at least two of your number until every vote is counted out; that you will faithfully and impartially conduct yourselves as judges of this election; and that you will in all respects perform the duties imposed upon you by law as judges and inspectors of this election. So help you God."

The oath of the clerks is as follows:

"You do solemnly swear that you will faithfully, truly, and impartially discharge your duty as clerks of this election. So help you God."

It is proper to observe that the petition does not charge that the petitioner actually received a majority

of the votes cast in the election, or that there was any imposition or deception upon the voters, or that there was disorderly conduct at the precinct complained of, or that the votes were not counted as cast, or that illegal votes were cast, or that legal voters were forbidden to vote, or that the failure to take the oaths of office upon the part of the election officials affected the result of the election in any way. It is merely an irregularity which, it is insisted for the petitioner, is a mandatory one, and a failure to observe it by taking the oath before the polls were opened rendered the election at the precinct complained of absolutely void.

It was observed by this court in *Barry* v. *Lauck,* 5 Cold., 593, in 1868, that:

"In determining what circumstances of official omission or misconduct will avoid an election, the object to be attained by an election must be kept in view, to wit: The ascertaining of the will of the community upon a particular question. Whatever statutory provisions are essential to the attainment of this end, are obviously indispensable; and whatever precautions prescribed by statute against mistake or fraud are of such a nature that their omission in the particular instance has resulted in a fraud upon the electors, or has rendered the result of the election incurably uncertain, or the future omission of which, in the future, if permitted, must necessarily prove avenues of fraud, tend to prevent a fair exercise of the franchise, or to render elections insecure and uncertain, must be

held to be matter of substance, and essential to the validity of the proceeding.''

It is conceded by the petitioner that the will of the community was correctly ascertained at the election complained of, and this, of course, satisfies the spirit, if not the letter, of the law. Courts are properly very slow to interfere with the declared result of an election unless there are specific charges of fraud directed against named voters sufficient in number to change the result. This rule is supported by a sound public policy grounded in a due regard for the peace and order of society and the stability of governments. If the will of a majority of the legal and qualified voters has been ascertained, although irregularly ascertained, it would be bootless to order another election to accomplish the same purpose. Such a rule would not only accomplish no good result, but would throw the community involved into turmoil and stri*e*

We think the requirement of the statute that officers and clerks of elections shall take the oaths of office prescribed is a mandatory provision intended to secure the purity of the ballot by permitting all legal voters to vote, and preventing illegal voters from voting, and by securing a correct count of the ballots as cast. But a reasonable enforcement and application of the statute should always be given, and hence when it affirmatively appears that no injury was done, either to the voters or to the candidates before the voters, failure to take and subscribe the oath by the officers of the election is a mere irregularity for which the

election will not be invalidated. *State ex rel.* v. *Burrow,* 119 Tenn., 376, 104 S. W., 526, 14 Ann. Cas., 809. The contrary rule would defeat the will of the majority. It would confer the office upon the minority candidate and thus subvert the purpose for which the election was held. In addition, it would confer upon the officers holding the election power to defeat the election entirely, and thereby enforce their arbitrary will upon the community. This would be a perversion of the purposes of an election and a violation of the rule laid down by this court in *Barry* v. *Lauck,* supra. The legislature did not intend to confer such power upon the officers holding the election. Its purpose was to secure the purity of the ballot and to guarantee the enforcement of the will of a majority of the voters. As this has been done, according to the allegations of the petition, we think the election was valid.

In *McCraw* v. *Harralson,* 4 Cold., 40, this court, in speaking of a similar statute, nonobservance of which was claimed to invalidate an election, said:

"No illegal votes, as shown by the record, were received, and none improperly rejected. The election was quiet, and conducted in a spirit of fairness throughout the county, and without complaint, in this respect, by any one. Under such circumstances, it would be a violent presumption, in the absence of all fraud, undue influence, or misconduct, in the deputies holding the election, to decide, that the mere fact, that the coroner appointed the deputies, whether before

or after he assisted in making up a ticket for county offices, upon which his name was placed as a candidate for trustee, rendered the election null and void. Such a conclusion is absurd, and cannot be maintained by reason or authority.''

This case was reaffirmed upon this point in *Cook* v. *State,* 90 Tenn., 414, 16 S. W., 471, 13 L. R. A., 183.

A great many cases are reported which hold in substance with this opinion. They are too numerous to be reviewed or even cited. A great many of them are collected in a note to *Peabody* v. *Burch,* 75 Kan., 543, 89 Pac., 1016, 12 Ann. Cas., 722. They include cases from the States of Alabama, California, Colorado, Connecticut, Florida, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, New York, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Washington, Wisconsin, Wyoming, and we add our cases of *Barry* v. *Lauck* and *McCraw* v. *Harralson,* supra. See *McCrane* v. *Nez Perce County,* 18 Idaho, 714, 112 Pac., 312, 32 L. R. A. (N. S.), 730, Ann. Cas., 1912A, 165, and notes; *Tuntland* v. *Noble et al.,* 30 S. D., 145, 138 N. W., 291, Ann. Cas., 1915A, 1004, and notes; *Hughes* v. *Roberts et al.,* 142 Ky., 142, 143 S. W., 168, Ann. Cas., 1912D, 143, and note; 5 Cyc., 372.

Affirmed.