

# THE ATTORNEY GENERAL
# OF TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXX
WILL WILSON
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. J. B. Stevenson
Assistant County Attorney
Kimble County
Junction, Texas

Dear Sir:

Opinion No. 6198
Re: Status of Independent School
District with less than 150
scholastics according to
latest census.

Re: Status of primary election
clerk nominated for office
by write-in campaign, and
who has violated Art. 218,
Penal Code.

Your recent communication addressed to this depart-
ments reads, in part, as follows:

"I have been asked by the County Judge of
Kimble County whether or not an Independent School
District which has fewer than one hundred fifty
(150) scholastics, as required in Art. 2763, Revised
Civil Statutes, applying to small Independent School
Districts, but has the required number of scholastics
going to school in this Independent District by rea-
son of transfers from two other Common School Dis-
tricts. The trustees of this Independent School
District contracted with the two Common School Dis-
tricts above mentioned for these scholastics. There-
fore, is this Independent District still an Independ-
ent District or does it revert to a Common School
District?

"In a Primary Election where the qualified voters
write the names in for an officer, and one of the names
so written is is on the Election Board as a clerk, and
if the officer, who is on the Election Board, has vio-
lated the provisions of Art. 218 P. C. of the Statutes
and said officer had been elected, would the fact that

> he violated the provisions of said article pre-
> clude the Democratic Executive Committee from
> certifying said candidate and causing his name
> to be placed on the ballot for General Election
> in November?"

Regarding the matters covered by the first quoted paragraph of your letter, you are advised as follows:

Art. 2763, R. C. S., regarding small independent school districts and laws applicable thereto, reads thus:

> "All incorporated districts, having each fewer
> than one hundred and fifty scholastics according to
> the latest census, shall be governed in the general
> administration of their schools by the laws which
> apply to common school districts; and all funds of
> such districts shall be kept in the county deposi-
> tories and paid out on order of the trustees ap-
> proved by the county superintendent."

By "latest census," as referred to in Art. 2763 aforesaid, is meant the latest March scholastic census pro-vided for in Chapter 14 of Title 49, V. A.S. C. Such is the uniform and unvarying interpretation of our State Department of Education, we have been officially advised. Neither have we discovered any statutory provision to the contrary. There-fore, any transfers which are effected by any of the statutory methods cannot be considered in determining the scholastic population according to the "latest census," within the meaning of said Art. 2763.

A close reading of Art. 2763 aforesaid reveals that an incorporated or independent district, having fewer than 150 scholastics according to the latest census, does not lose its status of an incorporated district. Such a district "shall be governed in the general administration" of its schools "by the laws which apply to common school districts." Also, all funds of such district shall be kept in the county depository and paid out on order of the trustees approved by the county superintendent."

Your first question is therefore, answered as follows:

Such district remains an independent district. It does not revert to a common school district.

We now consider the second quoted paragraph of your communication.

Article 2940, Vernon's Annotated Civil Statutes, reads, in part, as follows:

"No one who holds an office of profit or trust under the United States or this State, or in any city or town in this State, or . . .who is a candidate for office, . . .shall act as judge, clerk or supervisor of any election;. . ."

In the case of Gayle v. Alexander, 75 S. W. (2) 706, our Court of Civil Appeals at Waco, in construing the provisions of said Art. 2940, said:

"The legislative intent in enacting the article under consideration was evidently to restrict the selection of election officers to those who were free from the supposed influence, embarrassment, or interest arising from office holding or personal candidacy . . .So far as the selection of election officers is concerned, said article might well be deemed mandatory and compliance therewith required when the eligibility of an officer so selected is denied, or his right to serve as such assailed by any proper proceeding prior to his actual service. Browning v. Gray, 137 Tenn. 70, 191, S. W. 525. No such situation is presented in this case. But should the provisions of said article in that phase of its application be held mandatory, it does not necessarily follow that when a person named in said article has been selected as an election officer for a particular voting precinct, and his selection has not been assailed but has been acquiesced in by the qualified electors of such precinct by participating in the election held therein, and the votes cast in such precinct have been fairly and correctly counted and tabulated and return thereof duly made, that such election as to said precinct should solely by reason of

the participation of such election officer in holding the same, be declared viod, the returns thereof excluded from the canvass of the votes cast in said election in the entire county, and the voters of such precinct thereby in effect disfranchised.

"The courts have held with practical unanimity that an election is not vitiated by the fact that the election officers who acted under color of authority did not possess the required qualifications, especially when no fraud or misconduct is imputed.  Hunnicutt v. State, 75 Tex. 233, 239; 12 S. W. 106; Gell v. Faulkner, 84 Tex. 187, 190; 19 S. W. 480; . . .20 C. J. pp. 89, 90 §69; 9 R. C. L., p. 1012, et seq. §32 and 33. . ." (Emphasis ours)

From your communication, it is not clear just when the election clerk became a candidate for the office involved. We presume, therefore, that he was not a candidate at the time of his selection as clerk.  He was evidently nominated as a result of a "write-in" campaign.

In just what manner, said clerk violated the provisions of Art. 218, P. C., if he did so, is not stated.  Said Article 218 reads as follows:

"Any judge, clerk, or other person who may be in the room where an election, either primary, special or general, is being held, who there indicates by word or sign how he desires a citizen to vote or not to vote, shall be fined not less than two hundred nor more than five hundred dollars and be confined in jail not less than ten nor more than thirty days."

The penalty for violating any of the provisions of said article is thus limited to a fine and jail sentence. No other penalty is prescribed.  Therefore, the Democratic Executive Committee would not be precluded from certifying said candidate and causing his name to be placed on the ballot for general election in November.

We further hold that it makes no difference when said election clerk might have become a candidate for the office to which he was nominated. Unless an election contest has been filed within the statutory time, resulting in a final judicial determination that said clerk's violation of any or all of the provisions of Art. 218 P. C., was of such a nature and to such an extent as to change the result of the election, said nominee's name must be properly certified for a place on the ballot in the November general election.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By      L. H. Flewellen
        Assistant

LHF:rt/pam

APPROVED OCT 2, 1944
CARLOS C. ASHLEY
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
BY BWB, CHAIRMAN