Ed Summitt *v.* Freeman Russell *et al.*

(*Knoxville,* September Term 1955.)

Opinion filed December 9, 1955.

AMBROSE & WILSON, of Knoxville, for contestant.

S. P. DANNELL, and WATKINS & WATKINS, all of Loudon, and HOBART S. ATKINS, of Knoxville, for defendants.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is an election contest between the contestant Ed Summitt and the contestee Freeman Russell. The Circuit Judge held that the election of August 5, 1954, for Sheriff of Loudon County, was illegal and void.

The contestant's original complaint alleged that he was the candidate of the Democratic Party for the office of Sheriff of Loudon County, in the election held on August 5, 1954, and the defendant, Freeman Russell, was the Republican candidate for the office of Sheriff, they being the only candidates for that office, and that the other defendants Roy Ledbetter, Homer F. Littleton and Ben Roberson were the members of the Election Commission of Loudon County. The complaint was filed prior to the time for the official canvass of the ballots, and alleged that by an unofficial canvass of the ballots to be

a total of 7,236 votes cast in the Sheriff's election, of which the unofficial returns gave 3,574 to contestant and 3,662 to defendant, Russell. Thereafter, by amendment it was alleged that the Election Commission had canvassed the returns and had reported the vote as follows: Total vote—7,237 of which the contestant received 3,575 and the defendant Russell 3,662, or a difference of 87 votes.

The complaint further alleged that contestant was, by reason of mistakes, and illegal and fraudulent count in various precincts, deprived of a true count, and, in fact, he actually received a majority of the votes cast. The complaint set out six different precincts in which irregularities were charged, but for the purpose of this case the charge of irregularities in four of these precincts has been dropped, and contestant now relies only on irregularities charged in the Lenoir City Outside Precinct, District No. 2, in which case contestant alleged that on a proper recount of the ballots, he would be entitled to a gain of at least thirty-five votes, and in the Lenoir City Inside West Precinct, District No. 2 where contestant alleged that a proper count of the ballots would show him entitled to a gain of at least sixty votes.

Later on the defendant, Russell, filed a demurrer to the complaint. Then the contestant filed a second amendment to his petition, alleging that in connection with the Lenoir City Outside Precinct, District No. 2, that the official tally showed the vote to be 451 for Russell and 741 for contestant, whereas, if the ballots were properly counted they would show the vote to be not more than 430 for the defendant and at least 765 for contestant, and further that in connection with the Lenoir City Inside West Precinct, District No. 2, the official tally showed 505 votes for the defendant and 596 for contestant, where-

as, if the ballots cast at said precinct had been properly counted, the tally would show at least 630 votes for contestant and not more than 475 for defendant. This amendment also alleged that the ballot boxes had been properly and safely delivered to the Election Commission and had been safely kept by the Commission since that time, and contained the actual ballots cast in that election.

The Court permitted the contestant to file this amendment and then overruled the demurrer of the defendant. Then the defendant, Russell, filed his answer to the complaint, denying the allegations of the complaint as to the improper conduct or mistake on the part of the Election Officials, and affirming the official canvass as showing the correct vote and denying that the ballot boxes were properly delivered to the Election Commission, or that they had been safely and properly kept since that time.

There was introduced on behalf of both the contestant and the defendant a large number of witnesses.

The proof of the contestant shows that the election officers counted the ballots on the night of August 5th and 6th, and finally completed the count about 11 o'clock on the morning of August 6th.

There is proof introduced on behalf of the contestant that one Joe McCowan, one of the judges in the Lenoir City Outside Precinct, stated that he was holding the election and that he was getting all the votes he could get off the contestant.

There was also proof introduced by the contestant that there were many votes miscounted during the count.

One witness testified that he saw the ballots which were called for the contestant, and after three or four more ballots had been called, the officer holding the election went back and made some changes.

Another witness for the contestant testified that he

was present at the count and that seven or eight ballots were questioned, and that all of the questioned ballots were counted for the defendant.

Many witnesses testified for the contestant and testified to the same effect as above stated.

The Circuit Judge held that the election was void for the reason that the poll books, lists of votes, and tally sheets were not certified by the election officials or by a majority of said officials in said precinct.

It is assigned as error here that the Circuit Judge should have permitted the contestant to introduce credible testimony to prove the poll books, lists of votes, and tally sheets in the ballot box for the Lenoir City Outside Precinct, and that the Circuit Judge was in error in refusing to recount the votes cast in these two precincts.

The Section of our Code, Williams' Tennessee Code, pertaining to this matter are as follows:

Section 2094 provides as follows:

*"Preserving and certifying poll books.*—The judges at every election shall preserve the poll books, or lists of the names of voters, kept by the respective clerks; and said judges, or a majority of them, shall certify that the same do contain a true list of the voters at the respective places of holding elections, which certificate shall be attested by the clerks and officer or person holding the election."

Section 2095. *"Poll books, evidence.*—Said books or lists, or copies of them, certified by the officer having custody of them, shall be records, and be received as evidence in any case arising out of said election, subject to be impeached, however, by other evidence."

Section 2096. *"Poll books or lists may be proved by credible testimony, when.*—If the said officers fail

to return the poll books or lists of votes, or copies of them, certified as aforesaid, the same may be proved by other credible testimony, and received as evidence in any case arising out of said election.''

It is insisted by the contestant that the Legislature did not intend to make the validity of an election held in every precinct to depend upon whether or not the poll books were properly certified by the judges or a majority of them. That this irregularity was cured by the enactment of Section 2096, providing for the proof of same in any case arising out of an election by other credible evidence when not properly certified.

Contestant insists that the purpose of an election has been carried out when the votes are honestly called and counted, and the certificate by the judges can add nothing to the result, nor should the lack of a proper certification invalidate the election under such circumstances.

The purpose of the enactment of Section 2094 of the Code, as above set out, was to obtain an honest return of the votes cast. It cannot be said that the result would have been different in the questioned precinct had the judges properly certified the poll books and tally sheets.

It seems that the ballot boxes in the present case actually contained the ballots cast in the election in this precinct. No witness casts any doubt on this. All of the witnesses, who knew anything about it, said the ballots were all placed in the box, the box locked and delivered to the Election Commission, and transported to the courthouse without being opened or tampered with, and that the box had been kept inviolate since that time.

We are of the opinion that the irregularities in this election could have been cured by a recount of the votes in said election.

In the case of *Browning* v. *Gray,* 137 Tenn. 70, 191 S. W. 525, 526, the Court said:

"We think the requirement of the statute that officers and clerks of elections shall take the oaths of office prescribed is a mandatory provision intended to secure the purity of the ballot by permitting all legal voters to vote, and preventing illegal voters from voting, and by securing a correct count of the ballots as cast. But a reasonable enforcement and application of the statute should always be given, and hence when it affirmatively appears that no injury was done, either to the voters or to the candidates before the voters, failure to take and subscribe the oath by the officers of the election is a mere irregularity for which the election will not be invalidated. State ex rel. [Gouge] v. Burrow, 119 Tenn. 376, 104 S. W. 526, 14 Ann. Cas. 809. The contrary rule would defeat the will of the majority. It would confer the office upon the minority candidate and thus subvert the purpose for which the election was held. In addition, it would confer upon the officers holding the election power to defeat the election entirely, and thereby enforce their arbitrary will upon the community. This would be a perversion of the purposes of an election and a violation of the rule laid down by this court in Barry v. Lauck, supra [45 Tenn. 588]. The legislature did not intend to confer such power upon the officers holding the election. Its purpose was to secure the purity of the ballot and to guarantee the enforcement of the will of a majority of the votes. As this has been done, according to the allegations of the petition, we think the election was valid."

See also 18 Am. Jur. Elections, Sections 225, 251, at pages 331 and 345.

■■ The general rule as to the failure of election officials to comply with statutory provisions relating to the form and manner in which election returns from voting districts or precincts are to be made, may be found in 106 A. L. R. 398. This rule is stated as follows on page 399:

"It may be stated, therefore, that as a general rule honest mistake or mere omissions on the part of the election officers, or irregularity in directory matters, even though gross, if not fraudulent, will not void an election unless they affect the result, or at least render it uncertain * * * And even if the acts of such officers are fraudulent, the votes of the electors should not be invalidated if it is possible to prevent it."

"It is next asserted that there was no poll books showing the names of the voters, and there were no ballot stubs showing the names of the persons who voted. The ballot stubs are not required as a part of the return. The statute does require that the judges appointed to conduct the election shall make a return of the original ballots cast, the poll books, etc. 'The provisions of an election statute which affect the receiving and recording of the ballot and the canvass of the vote are generally regarded as directory only.' 29 C. J. S., Elections, § 222, page 325, Draper v. Board of County Com'rs of Latimer County, 203 Okl. 257, 220 P. (2d) 447."

See also *Coffey* v. *Board of County Com'rs of McCurtain County,* 1951, 205 Okl. 238, 237 P. (2d) 139, 142; *Fowler* v. *State,* 68 Tex. 30, 3 S. W. 255.

■■ We think the parties should be permitted to introduce proof to show whether or not there was in fact miscounting of the ballots of the two precincts involved. According to the record the ballots have been preserved

and we see no reason why they should not be recounted, the officers, judges and clerks examined as to the correctness of the returns, and that the Court ascertain the reason why the returns were not certified.

It is not the intention of the Court to modify our holding in *Browning* v. *Gray,* 137 Tenn. 70, 191 S. W. 525, or any of the other decisions of this Court in the matter of election contests.

It is therefore the opinion of this Court that this case be reversed and remanded to the Circuit Court of Loudon County for further proceeding consistent with this opinion.

The costs of this appeal will be divided equally between contestant and contestee.