IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 21, 2008 Session

**MIKE PARSONS v. JEFF HUFFMAN, ET AL.**

**Direct Appeal from the Chancery Court for Tipton County**
**No. 24402     Joseph H. Walker, Chancellor**

---

**No. W2007-00327-COA-R3-CV - Filed June 3, 2008**

---

This appeal involves an election contest filed by a losing candidate for county executive. According to the plaintiff's complaint, the county election commission provided the minimum number of voting machines required by state law. However, the plaintiff alleged that the commission should have provided more voting machines because long lines at some voting locations caused many people to leave without voting. The trial court dismissed the complaint for failure to state a claim, among other things. The plaintiff appealed. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Mike Parsons, Arlington, TN, *pro se*

Duke H. Brasfield, Covington, TN; Robert V. Redding, Kate R. Armes, Jackson, TN, for Appellees

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Mike Parsons was a candidate for the office of Tipton County Executive in the August 3, 2006 Tipton County general election. The opposing candidate, Jeff Huffman, was declared the winner of the election. On August 14, 2006, Mr. Parsons filed this lawsuit contesting the election. His complaint alleges:

> 3. Although the State of Tennessee requires that the county provide a minimum of one machine per 750 voters, the county has the ability and duty to have as many voting machines as they feel they may need in a given election. Microvote, the vender of voting machines[,] stated, through their representative, Bill Whitehead, that Microvote recommended that they, the Tipton County Election Commission, have one machine per every 250 voters. According to the Tipton County Election Commission, they only provided the state mandated minimum.
>
> 4. I personally observed over 200 individuals arrive to vote at the East Atoka Precinct and after waiting, many for hours outside in 100 degree temperatures, left without voting. This same occurrence was observed by many other witnesses at several other polling locations in the south end of Tipton County.
>
> 5. To the contrary, the polling locations at the north end of the county had no long lines and no reports of people walking away without voting due to long lines.

Mr. Parsons requested that process issue against the defendants, that a hearing be set within the time prescribed by Tennessee Code Annotated section 2-17-106, and that the August 3 election be voided and another election held. Mr. Parsons also requested that "the poll books, voter signature list, ballot applications[,] voting machines and all other proper evidence be received by the court as required by T.C.A. sections 2-17-109 and 2-17-110."

The defendants, Jeff Huffman, the Tipton County Election Commission, and its Chairman, James Sneed, filed a motion to dismiss. They argued that service of process was not properly executed in accordance with Tennessee Code Annotated section 2-17-103; that the complaint was barred for failure to comply with the time limitations in Tennessee Code Annotated section 2-17-105; and that the complaint failed to state a claim upon which relief could be granted.

In response, Mr. Parsons filed an "Emergency Motion to Compell and Clairification" [sic] demanding that the defendants present him with the voter lists, poll books, ballot applications, all correspondence by anyone with or concerning Microvote (the voting machine vendor), and a complete list of all persons having any involvement with the August 3 election. Mr. Parsons also

sought to clarify that he was suing Jeff Huffman in his individual capacity, not in his capacity as the newly-elected Tipton County Executive.

Following a hearing, the trial court entered an order granting the defendants' motion to dismiss on November 21, 2006. The court found that service of process was improper because Mr. Parsons acted as his own process server in violation of Tennessee Code Annotated section 2-17-106 and Rule 4 of the Tennessee Rules of Civil Procedure.[1] The court also found that Mr. Parsons did not make proper return of the summonses, as the return of the summons issued for Jeff Huffman stated that it was served on someone at the Tipton County Election Commission, and conversely, the summons issued for the Tipton County Election Commission and its Chairman was served on an administrative assistant at Jeff Huffman's office. Mr. Parsons signed the return for each summons, but did not list his address. As an alternative basis for granting the motion to dismiss, the trial court found that Mr. Parsons's complaint did not state a claim upon which relief could be granted. The trial court denied Mr. Parsons's motion to compel and for clarification, stating that Mr. Parsons was attempting to raise new issues after the ten-day statute of limitations for filing an election contest had expired.

On December 21, 2006, Mr. Parsons filed a motion for new trial and to alter or amend the judgment. Regarding service of process, Mr. Parsons claimed that he only provided the defendants with additional copies of the summonses. He claimed that he paid the sheriff's department to serve process, but admitted that the court's file did not contain any copies of summonses served by the sheriff. The motion went on to address the merits of the case, and Mr. Parsons again raised the issue of long lines at the polls, but this time he attributed the long lines to the fact that early voting was only held in one location in Covington at the election commission office. He claimed that the election commission should have notified the public prior to the election that lines would be longer. Mr. Parsons also claimed that voting machines at some locations were too close to the line of people waiting to vote, and too close to adjacent voting machines, so that others could see how a person voted. He also claimed that one voting location closed six hours late at 1:00 a.m., that some votes were counted prior to the closing of all polls, and that there were discrepancies between the local television station's reported election results and the final results. Mr. Parsons again demanded that he be allowed to examine evidence regarding the "vote tabulation process," stating that it might explain the discrepancies between the television station's results and the official results.

_____

[1] Rule 4.01(2) of the Tennessee Rules of Civil Procedure provides that "[a] summons and complaint may be served by any person *who is not a party* and is not less than 18 years of age. The process server must be identified by name and address on the return." (emphasis added). Tennessee Code Annotated Title 2, Chapter 17 addresses contested elections, and section 2-17-106 provides:

> (a) The trial of an election contest shall be held not less than fifteen (15) nor more than fifty (50) days from the day the complaint is filed and not less than ten (10) days after the complaint is served on the defendant.
> (b) A *sheriff or constable* of the division or circuit shall serve a copy of the complaint on the defendant and make return to the court.

(emphasis added).

Following a hearing, the trial court denied the motion for new trial and to alter or amend the judgment. Mr. Parsons timely filed a notice of appeal.

## II. ISSUES PRESENTED

Mr. Parsons presents the following issues, slightly restated, for review:

1.   Did the trial court err in dismissing the complaint for failure to state a claim for relief?
2.   Did the trial court err in dismissing the case for improper service of process?
3.   Was the petition time-barred?
4.   Did the trial court err by ignoring the violations of election law by the election commission?
5.   Did the trial court err in refusing to grant Mr. Parsons's motion to compel?
6.   Did the trial court err in denying the motion for clarification?
7.   Did the trial court err in denying Mr. Parsons's question to the court as to whether the county attorney was representing Jeff Huffman as the county executive?
8.   Did the trial court err by presiding over this case when the judge had a vested interest in the outcome?
9.   Did the trial court err by excluding the exhibits that were filed with Mr. Parsons's motion for new trial from the technical record on appeal?
10.  Did the trial court err by excluding Mr. Parsons's statement of the evidence from the record?

For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim only tests the sufficiency of the complaint, seeking to determine whether the pleadings state a claim upon which relief can be granted. *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002); *Smith v. First Union Nat. Bank of Tenn.*, 958 S.W.2d 113, 114-15 (Tenn. Ct. App. 1997). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law because they do not constitute a cause of action. *Smith*, 958 S.W.2d at 115 (citations omitted). In making this determination, we construe the complaint liberally in favor of the plaintiff, taking all allegations of fact therein as true. *Id.* (citing *Fuerst v. Methodist Hosp. South*, 566 S.W.2d 847, 848-49 (Tenn. 1978); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976)). However, "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint." *Trau-Med*, 71 S.W.3d at 704 (quoting *Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn. 1977)). Where "no claim for relief is stated by a party, a court may properly dismiss the action, either on motion or sua sponte." *Donaldson*, 557 S.W.2d at 62 (citations omitted).

## IV. DISCUSSION

### A. Failure to State a Claim

-4-

In Tennessee, there are two grounds upon which an election contest may be predicated. ***Lee v. Tuttle***, 965 S.W.2d 483, 484 (Tenn. 1998); ***Forbes v. Bell***, 816 S.W.2d 716, 719 (Tenn. 1991). The plaintiff may assert that the election is valid and that if the outcome is properly determined by the court, it will be apparent that the plaintiff actually won the election. ***Forbes***, 816 S.W.2d at 719. "The proper relief in this event is a judgment declaring the contestant to be the winner." ***Id.*** at 719. In suits to be declared the winner, contestants must show: "(1) that the number of illegal votes exceeded the margin of victory; and (2) that to a mathematical certainty they would have been victorious had the illegal votes not been counted." ***Lee***, 965 S.W.2d at 484-85 (citing *Millar v. Thomas*, 657 S.W.2d 750, 751 (Tenn. 1983)).

In the second type of election contest, the plaintiff may claim that the election was null and void for some valid reason or reasons. ***Forbes***, 816 SW.2d at 719. "The proper relief in that case is to order a new election." ***Id.***

"The pleadings in a suit to contest an election are critically important, particularly the allegations of fact on which the claim for relief is based and the relief sought." ***Lee***, 965 S.W.2d at 486 (Reid, J., concurring). A complaint seeking to have a contestant declared the winner must specifically point out the alleged illegal votes cast for the opponent, and show that when those votes are thrown out, the votes the contestant received plus any legal votes he was deprived of would give him a majority. ***Forbes***, 816 S.W.2d at 719 (citing *Blackwood v. Hollingsworth*, 195 Tenn. 427, 260 S.W.2d 164, 166 (1953); *Shoaf v. Bringle*, 192 Tenn. 695, 241 S.W.2d 832, 833 (1951)). In the case before us, Mr. Parsons's complaint does not allege that the election was valid, that any votes were illegal, or that he would have won the election had the results been properly determined. Rather, he seeks to have the August 3 election "voided" and a new election held. Thus, we are dealing with the second ground for contesting an election.

Under Tennessee law, courts are empowered to void an election on two alternative, but closely related bases. ***Forbes***, 816 S.W.2d at 719 (citing *Millar v. Thomas*, 657 S.W.2d 750, 751 (Tenn. 1983)).

> First, upon a sufficient quantum of proof that fraud or illegality so permeated the election as to render it incurably uncertain, even though it can not be shown to a mathematical certainty that the result might have been different. Secondly, where some ballots are found to be illegal, and the number of illegal votes cast is equal to, or exceeds the margin by which the certified candidate won.

***Id.*** at 719-20 (quoting *Millar*, 657 S.W.2d at 751) (internal quotations omitted). The requirements for declaring an election void based upon allegations of illegal votes are less stringent than are the requirements for declaring a contestant the winner based on illegal votes. ***Id.*** at 720. However, the allegations must still be specific enough to establish that the results would have been different absent the illegal votes. ***Id.*** The omission of a statement setting out the margin of victory precludes a grant of relief on this ground. ***Id.*** Again, Mr. Parsons's complaint did not allege that any votes were

illegally cast, and he did not mention the margin of victory. His complaint is based on the first situation mentioned above, that the election should be declared void because it was "so permeated with fraud and illegality that it cannot be said to fairly reflect the will of voters." *See Forbes*, 816 S.W.2d at 720.

In cases seeking to void an election on this ground, "it is not necessarily fatal that the complaint does not specifically set out a sufficient number of illegal votes to change the result of the election or to make the result mathematically uncertain." *Forbes*, 816 S.W.2d at 720 (citing *Southall v. Billings*, 213 Tenn. 280, 375 S.W.2d 844, 849 (1963)). However, "the alleged wrong must be so gross and palpable a failure of the opportunity for a free and equal expression of the popular will, that the courts cannot permit the election to stand." *Id.* (citing *Barry v. Lauck*, 45 Tenn. 588 (1868)). Courts should be reluctant to take the step of declaring an election invalid. *Id.* at 724. Most election contests brought on this theory are based on claims of fraud or conspiracy. *Id.* at 720. Nevertheless, statutory violations alone may be sufficient to render an election void, especially if the statute was designed to "(1) prevent undue influence or intimidation of the free and fair expression of the will of the electors or (2) ensure that only those who meet statutory requirements for eligibility [may] vote." *Id.* at 724 (citing *Emery v. Robertson County Election Comm'n*, 586 S.W.2d 103, 109 (Tenn. 1979)). The focus of a court's inquiry should be whether the statutory violations are so serious as to thwart the will of the community. *Id.* at 720. "[N]ot every irregularity, or even a combination of irregularities, will necessitate the invalidation of an election." *Id.* at 724. Technical non-conformity with election statutes will not necessarily void an election, as "such strictness would lead to defeat rather than uphold popular election, and can not be maintained." *Id.* at 720 (quoting *McCraw v. Harralson*, 44 Tenn. 34 (1867)). Honest mistakes, mere omissions, or irregularity in directory matters, even if gross, but not fraudulent, will not void an election unless they affect the result or at least render it uncertain. *Id.* (citing *Summitt v. Russell*, 199 Tenn. 174, 285 S.W.2d 137, 141 (1955)).

For example, in *Forbes*, the plaintiff alleged that the county election commission violated various statutes in the following ways: allowing voters to use paper ballots rather than voting machines when lines grew long; failing to provide a private voting compartment for those using paper ballots; permitting the use of unlocked ballot boxes; allowing election officials to open the ballot boxes and remove pieces of paper while voting was in progress; allowing voters to turn in their paper ballots directly to election officials, rather than placing them in the ballot boxes; receiving unsigned poll and tally sheets from precincts; and permitting "lines of registered voters to accumulate . . . by not strictly enforcing time limits for voters to use the voting machines thereby causing registered voters to leave the voting place without voting after a wait of at least one and a half to two hours." *Forbes*, 816 S.W.2d at 723. The Supreme Court discussed various cases in which egregious conduct led to an election being set aside, and then concluded that the plaintiff's complaint failed to state a claim for relief because the alleged irregularities "[did] not fall far enough along the opposite end of the spectrum to subject the case to trial." *Id.* at 721. There was no allegation of fraud or conspiracy, and the allegations tended to demonstrate "largely technical violations" rather than misconduct by the election officials. *Id.* at 723.

-6-

In *Stuart v. Anderson County Election Comm'n*, 237 S.W.3d 297, 300 (Tenn. Ct. App. 2007), a plaintiff alleged, among other things, that because voters took too long at the voting machines, "substantial numbers of prospective voters left . . . after waiting in line for excessive time periods." The trial court dismissed the complaint for failure to state a claim, and on appeal, the Court stated:

> The allegations of illegality in the present case are certainly no more serious than those at issue in *Forbes* which were found by the Supreme Court to be insufficient as a matter of law to set aside the election on the basis that the election was permeated with irregularities. We conclude, as did the Court in *Forbes* and the Trial Court in this case, that the allegations of misconduct on the part of election officials were insufficient to taint the election. [*Forbes*, 816 S.W.2d] at 723. Thus, of the two bases upon which Plaintiff seeks to have this election declared invalid, the Trial Court correctly held that Plaintiff fails to state a claim upon which relief can be granted as to the first basis, that illegality so permeated this election "that it cannot be said to fairly reflect the will of the voters." *Id.* at 720.

*Stuart*, 237 S.W.3d at 305.

In this case, Mr. Parsons does not allege that any statutes were violated by the election commission, and he acknowledges in his complaint that the county election commission "provided the state mandated minimum" number of voting machines. Mr. Parsons simply claims that the election commission should have provided more voting machines because the lines were too long on election day. There is no allegation that any election officials conspired to deprive any candidate of votes. Clearly, there is not a "sufficient quantum of proof that fraud or illegality so permeated the election as to render it incurably uncertain," *see Forbes*, 816 S.W.2d at 719, and the trial court properly dismissed the complaint for failure to state a claim upon which relief could be granted. Mr. Parsons's issues regarding service of process and the timeliness of his petition are pretermitted.

### B.    *Alleged Violations of Election Law*

The next issue presented by Mr. Parsons asks whether the trial court erred by "ignoring the violations of election law by the Tipton County Election Commission." Presumably, Mr. Parsons is referring to the alleged violations raised in his motion for new trial and to alter or amend the judgment. In that motion, filed December 21, 2006, Mr. Parsons attempted to raise issues regarding early voting being held in only one location, the election commission's failure to notify voters that lines would be long, voting machines being too close together and easily observed by people waiting, one polling location closing late, the timing of counting votes, and discrepancies between the results reported on television and the official results. These facts were not set forth in his complaint filed on August 14, 2006.

Tennessee Code Annotated section 2-17-105 clearly states that "[t]he complaint contesting an election under § 2-17-101 shall be filed within ten (10) days after the election." "This special statute of limitations has long been strictly applied in election contests, which are purely creatures of statute and were not recognized at common law or in equity." *Forbes*, 816 S.W.2d at 718. The statutory prerequisites for filing an election contest are jurisdictional, and the court cannot review grounds for invalidating an election unless they have been filed within the ten-day statutory period. *Id.* In *Forbes*, the Supreme Court rejected the plaintiff's argument that the Tennessee Rules of Civil Procedure would allow her to amend her complaint outside the ten-day time period to include additional allegations and grounds for her suit that did not appear in the initial complaint. *Id.* The Court emphasized that the ten-day statutory limitation applies not only to complaints, but to amendments and exhibits to complaints. *Id.*

It is well-established that the statutory limitation in election contests is applied strictly to "amended or other pleadings, making new charges on which to contest an election." *Forbes*, 816 S.W.2d at 718 (quoting *State ex rel. Davis v. Kivett*, 180 Tenn. 598, 603, 177 S.W.2d 551, 553 (1944)). Amendments may be allowed, in the discretion of the court, if they "merely allege in more detail grounds already alleged," or if the amendment "seeks only to correct technical matters." *Id.* Here, however, Mr. Parsons attempted to raise totally new allegations in his motion for new trial. They cannot be construed as mere elaboration on the allegations in the original complaint, or as an attempt to correct a technical matter. As the Court noted in *Forbes*, "[w]hile these matters might well have been relevant at trial, they were raised too late to be considered in this case."

### C. The Motion to Compel

Next, Mr. Parsons claims that the trial court should have granted his motion to compel, in which he demanded that the election commission provide him with voter lists, poll books, ballot applications, all correspondence with or concerning Microvote, and a complete list of all persons having any involvement with the August 3 election. Mr. Parsons claims that he was entitled to these materials pursuant to the following two statutes:

> **§ 2-17-109. Poll books, voter signature lists and ballot applications as evidence. –**
> (a) Poll books, voter signature lists and ballot applications, or copies of them, certified by the officer having custody of them, are official records and shall be received as evidence in any case arising out of the election. They may be impeached by other evidence.
> (b) If the poll books, voter signature lists and ballot applications or copies of them are not certified, they may nonetheless be proved by other credible evidence and received as evidence in an election contest.
>
> **§ 2-17-110. Voting machine as evidence. –**

(a) If voting machines were used in the election, any party to the contest who challenges either the accuracy of the voting machines or the accuracy of the election officials' recording of the vote on the machines may have the machine or machines brought into court to be examined by the parties or as evidence.
(b) The total votes shown on the machine shall be conclusive unless the court finds reason to believe that the vote shown on the machine is not accurate.

First of all, these statutes do not provide any basis for Mr. Parsons to demand an inspection of election commission correspondence or lists of all persons involved with the election. In addition, section 2-17-110 is limited to situations in which a contestant has challenged "the accuracy of the voting machines or the accuracy of the election officials' recording of the vote on the machines." Mr. Parsons did neither.

Section 2-17-109 provides that the listed items "shall be received as evidence" by the trial court in election contests if certified by the officer having custody of the item. In other words, poll books certified by the officer having custody of them "are declared to be official records" by the statute, and admissible in evidence, subject to being impeached. *Gibson's Suits in Chancery* § 15.11 (Inman, 8th ed. 2004). If the poll books are not certified, they may be proved by other evidence and admitted. *Id.* Unfortunately, there are no cases interpreting or even citing Tennessee Code Annotated section 2-17-109. With regard to section 2-17-110, however, the Middle Section of this Court has concluded that the statute is only applicable "to a complaint alleging a cause of action in a statutory election contest and not to a complaint fatally defective ab initio under Rule 12.02(6)." *Lineberry v. Ashe*, No. M1999-00075-COA-R3-CV, 2000 WL 64156, at *5 (Tenn. Ct. App. Jan. 27, 2000). The Court explained that when the plaintiff's election contest complaint failed to state a claim for relief, the trial court should have dismissed the complaint rather than allowing the plaintiff to go on a "fishing expedition" by examining the voting machines. *Id.* at *4. We find the Court's reasoning persuasive and hold that the trial court did not err in refusing to order the production of the items requested.

### D.    The Motion for Clarification

Next, Mr. Parsons contends that the trial court erred in denying his motion for clarification. In that motion, Mr. Parsons stated that he wished to clarify that he was suing Jeff Huffman only in his capacity as a candidate, and not as the Tipton County Executive. We find that Mr. Parsons's complaint failed to state a claim against Jeff Huffman in any capacity, and it was properly dismissed.

### E.    A Question to the Court

Mr. Parsons next argues that the trial court erred in "denying Plaintiff's question to the court; was the county attorney representing Jeff Huffman as the county executive?" Mr. Parsons does not

cite any authority in support of this argument, and there is nothing in the record to review regarding this matter, so we will not address the issue. "The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400-401 (Tenn. Ct. App. 2006).

## F. The Trial Judge

Mr. Parsons also contends that the trial judge should not have presided over the case because the judge "was himself on the ballot of said election," and if a new election were held, "a write-in candidate could pose a challenge." Again, Mr. Parsons cites no authority regarding this issue. Mr. Parsons apparently assumes that if his election contest was successful, a new election would have been held as to all officials elected on August 3. We will not address this argument, as the only suggestion that the trial judge was in fact elected on August 3 comes from Mr. Parsons's brief on appeal. Facts recited in a party's brief, but not included in the record on appeal, will not be considered by this Court. *DuBose v. Parker*, No. W2005-01320-CCA-R3-HC, 2005 WL 3384723, at *4 (Tenn. Crim. App. Dec. 9, 2005) (citing *State v. Seyler*, No. 01C01-9801-CR-00050, 1999 WL 357348, at *3 n. 3 (Tenn. Crim. App. June 4, 1999); Tenn. R. App. P. 24(b)). The record does not disclose any facts regarding this issue, as Mr. Parsons did not raise an objection to the trial judge presiding over the case. "An objection to a judge's competence cannot be made for the first time on appeal." *Dupuis v. Hand*, 814 S.W.2d 340, 342 (Tenn. 1991); *see also Obion County v. Coulter*, 153 Tenn. 469, 284 S.W. 372, 374-75 (1924) ("The incompetency or disqualification of a judge . . . is waived in civil cases by failure to make the objection in limine on the hearing, and the parties are conclusively presumed to have consented to his presiding at the trial.") Recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting grounds for disqualification in order to experiment with the court, and raise the objection later when the result of the trial is unfavorable. *Id.* (citing *Holmes v. Eason*, 76 Tenn. (8 Lea) 754, 757 (1882); *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988)).

## G. The Record on Appeal

Mr. Parsons's final two issues question whether the record on appeal should contain his statement of the evidence and certain exhibits that he claims were filed along with his motion for new trial. We previously entered an order remanding this case to the trial court because we were not able to determine whether the record on appeal depicted a fair, accurate, and complete account of what transpired in the trial court. The trial court then entered an order expressly stating, "The Court does not approve the 'Plaintiff's Statement of Evidence.'" The order further stated that "no evidence was heard" because the motion to dismiss was considered on the pleadings. As for the exhibits at issue, the order stated: "The Motion for New Trial contained in the Technical Record, pages 16 thru 32 are the same as contained in the court file. There are no exhibits attached to the Motion. Exhibits should not be added at this point."

The purpose of the appellate record is to "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." ***State v. Housler***, 167 S.W.3d 294, 296 (Tenn. 2005) (quoting Tenn. R. App. P. 24).

> Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive.

Tenn. R. App. P. 24(e). We accord deference to the trial court's decision as to which matters are properly includable in the record, as the trial court is in the best position to determine those matters necessary to provide a fair, accurate, and complete account of the proceedings upon which the appeal is based. ***Housler***, 167 S.W.3d at 296 (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 868 (Tenn. 1993)). Finding no extraordinary circumstances in this case, we will defer to the trial judge's determination as to the documents to be included in the record.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, Mike Parsons, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.