# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 12, 2016 Session

## MICHAEL HOLLEY, ET AL. v. BETHANY HOLLEY ORTIZ

### Appeal from the Chancery Court for Giles County
No. 219      Stella L. Hargrove, Judge

_____

### No. M2015-01432-COA-R3-CV – Filed February 24, 2017

_____

This appeal concerns a mother's petition to modify an agreed order granting custody of her two minor children to their maternal grandparents. The trial court determined that the mother was entitled to invoke the doctrine of superior parental rights because it concluded that the previous order was a temporary custody order. The court then awarded the mother custody of her children. The grandparents seek review of the trial court's decision, first, to deny the grandparent's request for a continuance to secure new counsel and, second, to allow the mother a presumption of superior parental rights. While we disagree that the presumption of superior parental rights applied, we conclude that Mother still demonstrated a material change in circumstances and that a change in custody was in the children's best interests. We also conclude that the trial court did not abuse its discretion in denying the grandparents' motion to continue. Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Douglas Thompson Bates, IV, Centerville, Tennessee, for the appellants, Michael Holley and Jenny Holley.

Timothy P. Underwood and Joseph W. Henry, Jr., Pulaski, Tennessee, for the appellee, Bethany Holley Ortiz.

**OPINION**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bethany Holley Ortiz ("Mother") is the biological mother of two minor children, Ezekiel, born in 2009, and Brooklyn, born in 2010. At the time of the children's births, Mother was unmarried and resided with her parents, Michael Holley ("Grandfather") and Jenny Holley ("Grandmother") (collectively "Grandparents"), in Pulaski, Tennessee.

### A. INITIAL PETITION AND AGREED ORDER

On January 7, 2013, Grandparents filed a petition to terminate parental rights and for adoption in the Circuit Court for Giles County, Tennessee. The petition alleged that Mother moved out of Grandparents' home in the summer of 2010 and gradually abandoned her parental obligations. Grandparents claimed Mother saw the children only four times during the four months preceding the filing of the petition and failed to provide financial support. [1]

Grandparents also filed a motion for ex parte relief in which they sought to retain physical custody of the children. That same day, the trial court entered an order granting the motion for ex parte relief and enjoining Mother from contacting her children.

Mother filed a motion to dismiss, but the trial court never heard the motion. Instead, on April 29, 2013, Mother and Grandparents signed a handwritten agreement resolving all matters among them. The first sentence of the one-page agreement states: "[Grandfather] & [Grandmother] custodians; [Mother] loses parental superior rights." Next, the agreement outlines three phases of visitation over a ten-month period, whereby Mother would enjoy one weekend of visitation per month.

The first phase, which was to last four months beginning in May 2013, allowed Mother supervised visitation with the children one weekend per month at Grandparents' home. The second phase, which was to last six months beginning in September 2013, permitted mostly unsupervised visitation one weekend per month at Mother's home. However, Grandparents were entitled to randomly check on the children, and the children could not stay with Mother overnight. Finally, the third phase, which began in March 2014, permitted Mother one overnight, unsupervised visit per month.

On May 23, 2013, the trial court approved the agreement and entered an agreed order reflecting the parties' resolution of the issues. Notably, the first paragraph of the order states as follows:

---

[1] Grandparents also sought to terminate the parental rights of the children's biological father. The biological father is not a party to this appeal.

[M]other hereby agrees to the following permanent custody schedule which defeats her superior parental rights pursuant to Blair v. Badenhope, 77 S.W.3d 137 (Tenn. 2002)[.] [F]or purposes of future proceedings, she must show that it is in the best interest of the minor children for her to receive custody.

The order designated Grandparents as the custodians of Brooklyn and Ezekiel but specifically stated that "[t]he petition to terminate the parental rights of both biological parents is hereby dismissed with prejudice."[2]

## B. MOTHER'S PETITION TO MODIFY

On April 21, 2014, Mother filed a petition to modify the court's previous order. She alleged a significant and material change in circumstance since the entry of the prior order and argued that it would be in the children's best interest to name Mother primary residential parent. Specifically, Mother asserted in her petition that Grandparents frequently used derogatory language concerning Mother in the presence of the children, provided an inadequate living environment, and unnecessarily refused Mother access to her children. Grandparents answered in opposition to the petition.

1. Motion to Withdraw and Request for Continuance

On February 4, 2015, less than a week before the matter was scheduled to be heard, Grandparents fired their attorney, William M. Harris. Consequently, Mr. Harris filed a motion to withdraw on February 9, 2015, and requested that his clients be permitted 30 days to retain substitute counsel. The motion to withdraw indicated that it would be heard the next day, February 10, "or as soon thereafter as is convenient with the court."

On February 10, the morning of the hearing on Mother's petition, Mr. Harris did not personally appear to prosecute his motion to withdraw. Grandparents did appear and requested a continuance.

The trial court granted the motion to withdraw but denied Grandparents' request for a continuance. In its subsequently entered order, the court noted that the February 10, 2015, hearing date was the fourth setting of the case.[3] The order further noted its concern

---

[2] Grandparents later filed a motion under Rule 60 of the Tennessee Rules of Civil Procedure seeking correction of the court's order, which the trial court granted. The order as revised, which was entered on November 20, 2013, contains the same quoted language.

[3] The record indicates that the court initially set the case for September 12, 2014. However, because of the Grandparents' hiring of Mr. Harris, the parties agreed to reset the case for October 15,

3

regarding Grandparents' credibility relative to their reasons for seeking another continuance. Thus, the court conducted the hearing on Mother's petition as scheduled with Grandparents proceeding pro se.

2. Proof at the Hearing

Mother's proof at the hearing consisted of several witnesses, including herself, her new husband, and two additional relatives. At the outset, Mother admitted that she was not the person or the mother that she should have been in 2013. However, she testified that she had since changed into a more mature, responsible person and that she was now in a position to care for her children.

Regarding her current situation, Mother explained that she found work as a call center agent in August 2013. Mother testified:

> I have changed a lot. I am financially stable. I've got a good job. I'm in management at my job now. I'm actually applying for a supervisor position . . . . I love my children so much and I miss them when they are not at the house.

She also stated that she had enrolled in and attended a parenting class in March 2014.

Concerning her relationship with her children, Mother emphasized that she loved them and they also loved her. She married in 2013, and according to Mother, the children also loved her husband. She further testified that she and her husband were financially able to meet the children's needs.

Mother had also made preparations for the change in custody. Before trial, Mother arranged for the children to attend elementary school near her home and secured after-school care for the children while Mother worked. She also planned for the children's pediatric and dental care in Columbia and could add the children to her employer-provided health insurance.

Mother complained that, while in their custody, Grandparents did not foster Mother's relationship with the children. Mother testified that she consistently took advantage of the visitation that she was entitled to under the 2013 agreed order, but she claimed Grandparents often prevented her from seeing the children. According to Mother, she filed an incident report with the Sheriff's Department in September 2013 because she was not permitted visitation. She claimed that Grandparents did not permit

---

2014, to allow him time to prepare. As a result of a personal scheduling conflict involving Mr. Harris, the court postponed the trial a second time until November 18, 2014. The court continued the case a third time due to a scheduling conflict involving the guardian ad litem.

her to visit with her children on their birthdays and did not invite her to their birthday parties. Additionally, Mother stated that Grandparents failed to provide her notice of school and church activities.

Mother also indicated that Grandparents were inflexible with the visitation schedule, occasionally leading her to seek assistance from her attorney. While she admitted to not attending Thanksgiving or Christmas gatherings at Grandparents' home, Mother claimed that the tension between the parties was high and that Grandparents prevented her from parenting or disciplining the children in their presence.

In addition to claiming interference with physical visitations, Mother claimed that Grandparents often interfered with her twice weekly phone calls, which the 2013 agreed order permitted her to exercise. Mother further complained that Grandparents withheld the children's school pictures and medical information from her.

Freddie Ortiz, Mother's husband, testified that he loved the children and wished to help Mother parent them. Mr. Ortiz had three children of his own. Only his youngest child was still a minor, and she visited Mr. Ortiz every-other weekend.[4] Mother confirmed that Ezekiel and Brooklyn had a close relationship with Mr. Ortiz's daughter.

Stacey Smith, who is Grandmother's brother, testified as to his belief that Mother should regain custody of Ezekiel and Brooklyn. He explained that Mother, his niece, had matured and grown since she relinquished custody of her children. Mr. Smith testified that Mother's husband was an excellent influence on Mother and the children. Mr. Smith had no doubt that Mother and Mr. Ortiz could be good parents.

Mr. Smith claimed that he had witnessed Grandparents deny Mother the opportunity to talk to the children on the phone. Additionally, Mr. Smith described an occasion when Grandfather made disparaging remarks concerning Mother in the children's presence. Mr. Smith claimed that Grandfather, after a phone call with Mother, expressed his frustration with Mother and stated he "could just grab her by the hair . . . and just drag her down the road."

Dorothy Smith, Grandmother's mother, also was of the opinion that the children should reside with Mother. Ms. Smith testified that Mother, her granddaughter, was "physically, mentally, and financially able to take care of these [children]."

Besides their own testimony, Grandparents offered the testimony of their youngest daughter, Brittany Jordan. Ms. Jordan lived near Grandparents, and Grandparents often kept Ms. Jordan's child while she was working. She testified that she has been present on a few occasions when Mother came to Grandparents' home to pick up Ezekiel and

---

[4] Mr. Ortiz testified that he had "partial custody" of his children.

Brooklyn. According to Ms. Jordan, the children cried, hid, and begged not to leave with Mother on these occasions. She also denied hearing Grandparents speak negatively of Mother in the children's presence.

Grandfather testified that Mother refused to comply with the visitations provisions of the agreed order, despite Grandparents' cooperation. He also claimed that Mother often criticized Grandparents in the children's presence. Grandfather repeatedly testified that he loved his daughter. Still, he admitted to making disparaging remarks about her "out of anger."

Grandfather conceded that his personal finances were "somewhat" unstable and that he had been forced to file for bankruptcy on five occasions, most recently in 2014. Regarding employment, Grandfather admitted to being laid off several times, often for poor job performance. He also acknowledged that, on a number of occasions, he failed to pay the electric bill, which resulted in the electricity being cut off approximately 12 times. However, Grandfather explained that the electricity was always "cut right back on the same day."

Grandfather further admitted that he and Grandmother both "had issues in the past" with writing bad checks. He acknowledged that this included a bounced check written to the guardian ad litem in the present case.

Grandmother testified that she and her husband had been cooperative with Mother and even offered her additional visitation time beyond what was required by the 2013 order. Grandmother claimed that she also offered her daughter additional phone calls with the children. But she claimed that Mother often refused and had "chosen not to be a part of our life." Grandmother also testified to her belief that she was able to care for the children financially. She explained that the children had never gone overnight without the utilities working.

Finally, the children's guardian ad litem offered her observations of Grandparents, Mother, and the children. Addressing the court, the guardian ad litem stated that she was "gravely concerned about the quality of [the] time that [Mother] ha[d] been able to spend with her children" while in Grandparents' care. She also expressed her belief that Mother "[wa]s a very different person now than when the original petition was filed" and that Mother had worked hard to establish a good relationship with her children. The guardian ad litem further observed that Mother was "ready to be a mother and ha[d] made that apparent." Finally, she stated that Mother's husband, Mr. Ortiz, was an "excellent influence on the children" and that the couple's marital home was "more than adequate" for raising the children.

3. Ruling of the Trial Court

On February 20, 2015, the trial court entered an order granting Mother's petition. In awarding Mother custody, the court concluded that Grandparents only had temporary custody of the children. The court reasoned that "[the 2013 custody order] was not meant to be a final custody Order but an Order giving the mother an opportunity to re-establish her relationship with the children and to reunite the family."

The court found Mother had established physical, emotional, and financial stability over the previous year, specifically noting her steady employment for two years and her improvement of position within the company. Regarding Grandparents' credibility, the court stated: "[G]randparents were not credible in numerous particulars and this was a strong factor considered by this Court in making its ruling." The court also expressed "great difficulty reconciling [Grandparents' claims] with the proof presented."

Alternatively, the order provided that "the Court finds that even if the burden of proof required the mother to establish a material change in circumstances and the best interest analysis that she in fact carried that standard of proof . . . ." After considering the relevant statutory factors in Tennessee Code Annotated § 36-6-106, the order stated as follows:

> [G]randparents have unnecessarily hindered [Mother's] access to her children and have interjected themselves and their temporary custodial privileges in a way that has failed to promote a loving and nurturing relationship between the mother and the minor children.
>
> . . . [G]randparents' financial and personal instability [affects] their parenting skills and places the children in an inappropriate environment.

## II. ANALYSIS

On appeal, Grandparents argue that the trial court abused its discretion in denying their request for a continuance to secure counsel for trial. Grandparents also argue that the court erred by applying the presumption of superior parental rights in the custody proceeding. We consider each of these issues in turn.

### A. STANDARD OF REVIEW

As we have often noted, "[c]ustody and visitation determinations often hinge on subtle factors." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Consequently, we "are reluctant to second-guess a trial court's decisions" on such matters. *Id.* We review the trial court's factual findings de novo on the record, with a

presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). We review the trial court's conclusions of law de novo with no presumption of correctness. Tenn. R. App. P. 13(d).

## B. GRANDPARENTS' REQUEST FOR CONTINUANCE

We first consider whether the trial court erred in denying a continuance for Grandparents to secure counsel. Tennessee Code Annotated § 20-7-101 governs continuances and provides that continuances "may always be granted by the court, upon good cause shown, in any stage of the action." Tenn. Code Ann. § 20-7-101 (2009). This Court recently explained the standard a trial court applies when ruling on a motion to continue in *Tidwell v. Burkes*:

> Decisions regarding the granting or denial of a continuance are fact-specific and should be viewed in the context of all existing circumstances present at the time of the party's request for continuance. In order to prove that a requested continuance is justified, the party requesting the continuance must supply some strong excuse for postponing the trial date. When considering a motion for continuance, the following factors are relevant to the trial court's decision: (1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.

*Tidwell v. Burkes*, No. M2015-01270-COA-R3-CV, 2016 WL 3771553, at *5 (Tenn. Ct. App. July 8, 2016) (citations omitted) (quoting *Howell v. Ryerkerk*, 372 S.W.3d 576, 580-81 (Tenn. Ct. App. 2012)) (internal quotation marks omitted).

A trial court's decision to grant or deny a motion for continuance is discretionary and "will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997); *see also Comm'r of Dep't of Transp. v. Hall*, 635 S.W.2d 110, 111 (Tenn. 1982) ("[I]n order to show an abuse of discretion, the plaintiff must show some prejudice or surprise which arises from the trial court's failure to grant the continuance."). The Tennessee Supreme Court has stated that appellate courts are to set aside a discretionary decision "only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, *or employs reasoning that causes an injustice to the complaining party*." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008) (emphasis added).

8

Here, Grandparents argue that the trial court should have granted a continuance to allow them to replace the attorney they dismissed. However, because they chose to dismiss Mr. Harris only days before trial, Grandparents were directly responsible for their predicament. *Cf. Barish v. Metro. Gov't of Nashville & Davidson Cty. Tenn.*, 627 S.W.2d 953, 955 (Tenn. Ct. App. 1981) (remanding, under similar facts, for an evidentiary hearing on whether plaintiff was responsible for the withdrawal of her attorney and whether she used due diligence in seeking a new attorney prior to trial).

Additionally, the trial court had sufficient reasons for denying Grandparents' motion. Grandparents did not deny that they were unable to pay the retainer fee to secure new counsel. Further, Mother's petition concerned the custody of minor children and had been pending for 10 months at the time of trial. And, as the court pointed out, the case had already been continued several times before Grandparents' request on the morning of the trial. The court was also concerned with Grandparents' credibility and their reasons for seeking another continuance. Presumably, the trial court suspected that Grandparents sought the continuance to further delay the proceedings.

Even so, Grandparents argue that, because they were not permitted additional time to secure counsel, they were prejudiced by several instances of violations of the evidentiary rules. For example, Grandparents claim that "the trial court allowed [Mother's] counsel to ask multiple leading questions without objection" and admitted "hearsay and unauthenticated letters" into evidence. The trial court, however, addressed Grandparents' failure to object at trial, stating "[Grandparents] are here without counsel. I can't consider [hearsay] statements unless they are an exception under the hearsay rule. I've heard a lot of that. It will not affect my ruling unless it falls within [a] hearsay exception."

Further, our review of the record does not leave us convinced that Grandparents, if granted the requested continuance, would have been able to produce additional evidence or witnesses to disprove Mother's claims. *See Tidwell*, 2016 WL 3771553, at *7 (explaining that prejudice can be proved by showing "that the party was 'deprived of some evidence which he could have produced if the trial had been postponed.'") (quoting *Reagan v. McBroom*, 51 S.W.2d 995, 1000 (Tenn. 1932)). When asked about witnesses at trial, Grandfather explained that his youngest daughter intended to testify and that he wanted to call "other witnesses" not in attendance. But Grandparents do not identify these other witness on appeal, and they admitted that they had not been subpoenaed for trial.

For these reasons, we conclude that the trial court's decision to deny Grandparents' motion did not constitute an abuse of discretion.[5]

---

[5] We do find it troubling that counsel for Grandparents did not appear on the morning of trial when apparently he had not yet received permission from the court to withdraw. The local rules for the

9

## C. MOTHER'S PETITION TO MODIFY

Next, we consider whether the trial court erred in granting Mother custody of her children. This question requires a discussion of the applicable standard to modify an order awarding custody to a non-parent. On appeal, Mother argues that to deprive her of custody required clear and convincing evidence of substantial harm. Conversely, Grandparents argue that Mother was required to prove a material change in circumstances, which makes a change in custody in the children's best interest.

A parent has a fundamental right, based in both the federal and State constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002) *abrogated by statute on other grounds as recognized by Armbrister*, 414 S.W.3d at 693. Accordingly, the Tennessee Constitution "requires that courts deciding initial custody disputes give natural parents a presumption of 'superior parental rights' regarding the custody of their children." *Blair*, 77 S.W.3d at 141. Under this doctrine of superior parental rights, courts must favor the biological parent when faced with a competing custody claim by a non-parent. *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001). Indeed, in an initial custody proceeding, a court cannot award custody to a non-parent over a natural parent "unless the third party can demonstrate that the child will be exposed to substantial harm if custody is awarded to the biological parent." *Id.*

However, a parent is generally not entitled to invoke the doctrine of superior parental rights when seeking to *modify* a valid order placing custody with a non-parent. *Blair*, 77 S.W.3d at 148. In such cases, trial courts "apply the standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." *Id.* And, as this Court has previously explained, the material change in circumstances standard is applied even if the biological parent voluntarily ceded custody of the children to the non-parent. *Bryan v. Miller*, No. M2015-00550-COA-R3-CV, 2016 WL 4249291, at *9 (Tenn. Ct. App. Aug. 8, 2016); *see also Blair*, 77 S.W.3d at 147 ("[T]he parent's voluntary transfer of custody to a non-parent, with knowledge of the consequences of that transfer, effectively operates as a waiver of these [superior] parental rights.").

Still, a natural parent can retain his or her superior parental rights despite the fact that a non-parent has been awarded custody in certain instances. Our Supreme Court, in

---

Twenty-Second Judicial District, of which Giles County is a part, provide that "[n]o attorney may withdraw except for good cause and by leave of court upon motion after notice to his or her party and adverse parties." Rule 4.03, Twenty-Second Judicial District Local Rules of Practice.

10

*Blair v. Badenhope*, identified four such circumstances:

> (1) when no order exists that transfers custody from the natural parent;
>
> (2) when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent;
>
> (3) when the order transferring custody from the natural parent is invalid on its face; and
>
> (4) when the natural parent cedes only temporary and informal custody to the non-parents.

*Blair*, 77 S.W.3d at 143.

1. "Temporary and Informal Custody"

In the present case, the trial court determined that Mother retained her superior parental rights because it found the 2013 agreed order concerning custody to be a temporary order.[6] We disagree.

The order uses express language representing that it is a final custody determination. *Cf. Bryan*, 2016 WL 4249291, at *10 (finding a custody order temporary where the order expressly stated that it was not a final custody determination). As noted above, in the first numbered paragraph it states "[M]other hereby agrees to the following *permanent custody schedule*." (emphasis added). Moreover, both the agreed order and the handwritten agreement upon which the order was based plainly state that the arrangement "defeats [Mother's] superior parental rights." The order goes on to specifically cite *Blair v. Badenhope*, the very case in which our Supreme Court recognized that a parent who voluntarily cedes custody cannot invoke the doctrine of superior parental rights to modify a valid order transferring custody to a non-parent. *See Blair*, 77 S.W.3d at 147.

We recognize that the next line of the order stating that "for purposes of future proceedings, [Mother] must show that it is in the best interest of the minor children for her to receive custody" is misleading. As explained in *Blair*, a parent in cases such as this one must demonstrate both a material change of circumstance and that a change in custody is in the child's best interest in order to regain custody, as is further discussed

---

[6] Mother presented some evidence that she did not understand the custody agreement when she signed it in 2013, suggesting that perhaps the order was obtained through fraud. *See Blair*, 77 S.W.3d at 143. However, her position at trial and on appeal was that she ceded only temporary and informal custody to Grandparents.

below. *Id.* at 148. Still, despite the inconsistency in the 2013 order, we conclude it was a final order granting Grandparents custody of Mother's children.

Because the 2013 order did not temporarily and informally cede custody of the children and was a final order placing custody with Grandparents, Mother was not entitled to the presumption of superior parental rights. Mother was required to show that a material change in circumstances had occurred, which made a change in custody in the children's best interests

2. Material Change in Circumstances and the Children's Best Interest

In light of our conclusion that the 2013 custody order was a final order, we address Grandparents' argument that we should remand the case for a hearing under the appropriate material change in circumstance standard. Such a result might ordinarily be appropriate under these circumstances. However, despite our disagreement with the trial court's conclusion as to the nature of the 2013 order, the court found alternatively that Mother had proven a material change of circumstance and that a change in custody was in the children's best interest. After reviewing the record, we agree with this alternative finding of the trial court.

Final custody orders, such as the custody order at issue here, are res judicata and cannot be modified absent "a material change in circumstances that makes a change of custody in the child's best interest."[7] *In re E.J.M.*, No. W2003-02603-COA-R3-JV, 2005 WL 562754, at *16 (Tenn. Ct. App. Mar. 10, 2005) (citing *Blair*, 77 S.W.3d at 148). A material change in circumstance in this context may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." *Wilkerson v. Wilkerson*, No. M2014-02412-COA-R3-CV, 2016 WL 3044371, at *3 (Tenn. Ct. App. May 19, 2016) (quoting Tenn. Code Ann. § 36-6- 101(a)(2)(B) (Supp. 2015)). Although there are "no hard and fast rules for determining when" a material change in circumstance has occurred, factors for our consideration include: (1) whether the change occurred after entry of the order sought to be modified; (2) whether the change was known or reasonably anticipated when the order was entered; and (3) whether the change affects the child's well-being in a meaningful way. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002), *abrogated by statute on other grounds as recognized by*, *Armbrister*, 414 S.W.3d 685.

---

[7] As explained above, this is the same standard applied in parent-vs-parent modification proceedings, and therefore, decisions from such parent-vs-parent cases provide relevant authority. *In re K.C.*, No. M2005-00633-COA-R3-PT, 2005 WL 2453877, at *5 & n.8 (Tenn. Ct. App. Oct. 4, 2005).

The evidence in this case does not preponderate against the trial court's finding that a material change had occurred sufficient to modify the custody arrangement. In its order, the trial court found that "[G]randparents have unnecessarily hindered [Mother's] access to her children and have . . . failed to promote a loving and nurturing relationship between [Mother] and the minor children," and the court further found that "[G]randparents' financial and personal instability [affects] their parenting skills and places the children in an inappropriate environment."[8]

Mother presented evidence that Grandparents interfered with her relationship with her children. *See Williamson v. Lamm*, No. M2015-02006-COA-R3-CV, 2016 WL 5723953, at *5 (Tenn. Ct. App. Sept. 30, 2016) ("[I]nterference with the parent-child relationship can be a material change sufficient to modify the primary residential parent . . . ."). Mother's testimony in addition to the testimony of the two other relatives—Stacey Smith and Dorothy Smith—all demonstrate Grandparents' unwillingness to cooperate with Mother in exercising her visitation permitted under the 2013 order. The evidence also indicated that Grandparents prevented Mother from participating in the children's lives by actively excluding her from birthday celebrations and other activities in which the children were involved. Although Grandparents vehemently denied these allegations, the trial court specifically found that Grandparents lacked credibility. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007) ("[G]reat weight is afforded to the trial court's determinations of witness credibility, which shall not be reversed absent clear and convincing evidence to the contrary.").

Mother also presented proof of financial instability on the part of Grandparents. Grandfather admitted to filing for bankruptcy on several occasions, to writing bad checks, and that he often was unable to pay his utility bills. Grandfather had been laid off from a number of jobs in recent years, and it was unclear from the testimony if he was employed at the time of trial.

The finding of a material change in circumstance does not end the inquiry. Upon finding a material change, the court must then determine whether modification is in the child's best interest. *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015) (citing *Armbrister*, 414 S.W.3d at 705). Tennessee Code Annotated § 36-6-106(a) (2014)[9] lists several factors that courts may consider in making a best interest determination.

---

[8] Although Grandparents argue that the trial court did not specifically identify the material change in circumstance in its order, the aforementioned findings were listed in the two paragraphs immediately following the court's statement that "even if the burden of proof required the mother to establish a material change in circumstances and the best interest analysis[,] . . . she in fact carried that standard of proof . . . ." We are, therefore, satisfied that the trial court sufficiently indicated the facts supporting its finding of a material change in circumstance.

[9] The relevant statutory factors include:

The trial court made detailed findings as to the best interest factors, and the evidence does not preponderate against any of the findings relative to this issue. Mother and Mr. Ortiz offered more stability for the children and were in a better position, particularly financially, to successfully parent the children. As the trial court noted, Grandparents' ability to provide financially for the children was "highly suspect and improbable." Though Mother admitted to having issues preventing her from parenting her children in the past, she was gainfully employed, had matured, and had demonstrated that she was ready to be a mother. She and her husband had developed a strong bond with the children and had established a home suitable for raising them. And unlike Grandparents, Mother demonstrated her willingness to continue to foster a relationship between the children and Grandparents.

---

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities . . . ;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. . . . ;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . . ;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. . . . ;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. . . . ;

(14) Each parent's employment schedule . . . ; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a).

## III. CONCLUSION

In light of the foregoing, we conclude that the trial court did not abuse its discretion in denying Grandparents' motion for a continuance. We also conclude that the trial court did not err in granting Mother custody of her children. Although she was not entitled to the presumption of superior parental rights, Mother met her burden of establishing a material change in circumstance and that a change in custody is in the children's best interest.

_____

W. NEAL MCBRAYER, JUDGE